[L. A. No. 62.  In Bank.—November 27, 1896.]

AMANDA P. EVERETT et al., Respondents, *v.* LOS ANGELES CONSOLIDATED ELECTRIC RAILWAY COMPANY, Appellant.

Negligence — Action for Death — Collision of Electric Car with Bicycle—Contributory Negligence of Deceased—Careless Riding upon Railroad Track—Nonsuit.—Where a mature person of good eyesight and unimpaired hearing, who was an experienced rider of the bicycle, rode along the track of a double line electric railway, and crossed from one track to the other to avoid collision with an approaching train, and then rode on the other track in advance of a heavily loaded train, which was rapidly overtaking him, without turning his head, or looking to see the approaching train, and without hearing the ringing of the gong and other warning, given him from the train to get off the track, and without attempting to turn or increase the speed of his bicycle, whereupon the motorman, when within about ten or twenty feet of him, reversed the brakes, and endeavored to stop the train, but did not succeed in time to avoid a collision in which the rider of the bicycle was killed, such rider is chargeable with contributory negligence which will preclude a recovery in an action for his death, and it is erroneous for the trial court to refuse to grant a nonsuit in such action.

ID.—FAILURE TO LOOK AND LISTEN, NEGLIGENCE PER SE—CHARACTER OF RAILWAY IMMATERIAL.—In walking or riding along a line of railway where cars or trains are passing or likely to pass at short intervals, one while in a position to be endangered by such vehicles must pay attention to his surroundings, and employ his natural faculties, and exert due diligence to avoid such danger; and he must listen and look to ascertain whether danger is threatened by his situation, and a failure so to do constitutes negligence *per se*, or negligence in law which is not a question for the jury; and there is no distinction in the application of this doctrine between an electric or cable line operated upon the streets of a city and that of an ordinary steam railway operated upon the right of way of the corporation.

ID.—RIGHT OF MOTORMAN TO PRESUME CARE OF DECEASED.—The deceased having been seen to cross from one track to the other, to avoid a train, the motorman of the approaching train was justified in keeping on his course, and assuming that the deceased had, in the exercise of ordinary care, observed the approach of the train, and would either increase his speed or turn aside in time to avoid danger, and might presume that he would get out of the way up to the last moment.

ID.—REMOTE AND CONCURRENT NEGLIGENCE.—The rule which renders a defendant liable for injuries notwithstanding some negligence on the part of the person injured, where such negligence was the remote and not the proximate cause of the injury, cannot govern where both parties are contemporaneously and actively in fault, or where the negligence of the party injured continued up to the very moment of the injury, and was a contributing and efficient cause thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. J. W. McKINLEY, Judge.

The facts are stated in the opinion of the court.

*John D. Pope,* and *J. J. De Haven,* for Appellant.

Defendant had the superior right to the space covered by its tracks for the movement of its cars, and it was the duty of the deceased to get off the track and permit defendant's train to pass. (Booth on Street Railways, sec. 303.) Defendant was not bound to anticipate the negligence of the deceased, and had a right to act upon the assumption that he would move to one side and permit the train to pass. (*Kirtley* v. *Chicago etc. Ry. Co.,* 65 Fed. Rep. 386; *Lake Shore etc. R. R. Co.* v. *Miller,* 25 Mich. 279; *Moore* v. *Philadelphia etc. R. R. Co.,* 108 Pa. St. 349; *Yancey* v. *Wabash etc. Ry. Co.,* 93 Mo. 433, 438; *Holmes* v. *South Pac. Coast Ry. Co.,* 97 Cal. 164,

168; *Glazebrook* v. *West End Street Ry. Co.*, 160 Mass. 239; *Schierhold* v. *North Beach etc. R. R. Co.*, 40 Cal. 447.) It was the duty of the deceased, if he proposed to run along defendant's track in the direction in which he must have known that the trains of cars were running every few minutes, to look backward as well as forward, and, if necessary, to listen, so that he might know when a train was coming and move off the track on the approach of the train, and permit it to pass without stopping or slowing up. (*Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137; *Trousclair* v. *Pacific Coast S. S. Co.*, 80 Cal. 521; *Esrey* v. *Southern Pac. Co.*, 88 Cal. 399; *Holmes* v. *South Pac. Coast Ry. Co., supra; Illinois Cent. R. R. Co.* v. *Hall*, 72 Ill. 222; *Railroad Co.* v. *Depew*, 40 Ohio St. 127; *Carson* v. *Federal Street Ry. Co.*, 147 Pa. St. 219; 30 Am. St. Rep. 727; *McClain* v. *Brooklyn City R. R. Co.*, 116 N. Y. 459; *Schulte* v. *New Orleans etc. R. R. Co.*, 44 La. Ann. 509; Booth on Street Railways, sec. 313; *Ehrisman* v. *East Harrisburg etc. Ry. Co.*, 150 Pa. St. 180; *Bailey* v. *Market Street etc. Ry.*, 110 Cal. 320.) Deceased's own gross negligence was not only the cause, but the sole cause, of his death, and plaintiffs cannot recover. (*Glascock* v. *Central Pac. R. R. Co., supra; Kelley* v. *Hannibal etc. R. R. Co.*, 75 Mo. 138; *Railroad Co.* v. *Depew, supra; Holmes* v. *South Pac. Coast Ry. Co., supra; Pittsburg etc. R. R. Co.* v. *Collins*, 87 Pa. St. 405; 30 Am. Rep. 371; *Baltimore etc. R. R. Co.* v. *Whitacre*, 35 Ohio St. 627; *Kenna* v. *Central Pac. Ry. Co.*, 101 Cal. 26; *Delaware etc. R. R. Co.* v. *Converse*, 139 U. S. 472; *Hager* v. *Southern Pac. R. R. Co.*, 98 Cal. 309; *Holmes* v. *South Pac. Coast Ry. Co., supra; Davis* v. *California Street etc. R. R. Co.*, 105 Cal. 131; *Pepper* v. *Southern Pac. R. R. Co.*, 105 Cal. 389.) Deceased must be held to have known of the approaching train, and to have heard the bell and the loud calls of the motorman and passengers. (Patterson's Railway Accident Law, sec. 53; *Pennsylvania R. R. Co.* v. *Henderson*, 43 Pa. St. 449; *Chicago etc. Ry. Co.* v. *Hedges*, 118 Ind. 5; *Kenna* v. *Central Pac. R. R. Co., supra; Pepper* v. *Southern Pac. R. R. Co., supra.*) The ex-

ception to the rule that contributory negligence of the person injured will bar a recovery exists only in cases where the person injured cannot, and the defendant can by the use of ordinary care, prevent the injury. (*O'Brien* v. *McGlinchy*, 68 Me. 552; *Kirtley* v. *Chicago etc. Ry. Co., supra; Holmes* v. *South Pac. Coast Ry. Co., supra..*) The evidence shows that the motorman did not willfully or wantonly run the train upon the deceased; therefore, the ordinary rule applies that the contributory negligence of the person injured is a bar to the action. (*Maumus* v. *Champion*, 40 Cal. 121; *Tennenbrock* v. *South Pac. Coast Ry. Co.*, 59 Cal. 269; *Williams* v. *Southern Pac. R. R. Co.*, 72 Cal. 137; *Trousclair* v. *Pacific Coast S. S. Co., supra; Hager* v. *Southern Pac. R. R. Co., supra.*) Where the negligence of the person injured is a proximate cause and is subsequent in time to the negligence of the person who inflicts the injury, as it was in the case at bar, it is well settled that there can be no recovery. (Beach on Contributory Negligence, sec. 19; *Irwin* v. *Sprigg*, 6 Gill, 200; 46 Am. Rep. 667; *Gothard* v. *Alabama etc. R. R. Co.*, 67 Ala. 114; *Toledo etc. Ry. Co.* v. *Pindar*, 53 Ill. 447; 5 Am. Rep. 57; *Hoehl* v. *Muscatine*, 57 Iowa, 444; *Macon etc. R. R. Co.* v. *Winn*, 19 Ga. 440; *Walsh* v. *Mississippi etc. Co.*, 52 Mo. 434; *Richmond etc. Ry. Co.* v. *Anderson*, 31 Gratt. 812; 31 Am. Rep. 750; *Dudley* v. *Camden etc. Co.*, 45 N. J. L. 368.) Nor does the exception to the rule exist where the negligence of the party inflicting the injury and that of the person injured are contemporaneous. (Bigelow on Torts, 311; *Zimmerman* v. *Hannibal etc. R. R. Co.*, 71 Mo. 476; *Murphy* v. *Deane*, 101 Mass. 455; 3 Am. Rep. 390; *Holmes* v. *South Pac. Coast Ry. Co., supra; Davies* v. *Mann*, 10 Mees. & W. 546; *Kirtley* v. *Chicago etc. Ry. Co., supra;* Patterson's Railway Accident Law, sec. 58.)

*William J. Hunsaker*, for Respondents.

Whether or not defendant was guilty of negligence, whether or not the deceased was guilty of contributory negligence, and conceding deceased was guilty of con-

tributory negligence, the question whether, after his danger became apparent to the motorman, he could have stopped the car and avoided the injury, were all questions which alone could be determined by the jury. (*Van Praag* v. *Gale*, 107 Cal. 438; *Davis* v. *Pacific Power Co.*, 107 Cal. 563; 48 Am. St. Rep. 156; *Schierhold* v. *North Beach etc. R. R. Co.*, 40 Cal. 447; *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541; *McNamara* v. *Northern Pac R. R. Co.*, 50 Cal. 581; *Fernandes* v. *Sacramento City R. R. Co.*, 52 Cal. 45, 49, 52; *Defour* v. *Central Pac. R. R. Co.*, 67 Cal. 319; *Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 164, 172; *Swain* v. *Fourteenth Street R. R. Co.*, 93 Cal. 179; *Davies* v. *Oceanic S. S. Co.*, 89 Cal. 280, 285; *Driscoll* v. *Market Street Cable Ry. Co.*, 97 Cal. 553; 33 Am. St. Rep. 203; *Carr* v. *Eel River etc. R. R. Co.*, 98 Cal. 366; *Raub* v. *Los Angeles etc. Co.*, 103 Cal. 473; *Noyes* v. *Southern Pac. R. R. Co.*, 92 Cal. 285.) The degree of care required of a person at the crossing of a highway of, or walking or driving upon, an ordinary steam railroad, is not the test of care required in crossing the track of, or driving along, a street railroad in a public street. (Beach on Contributory Negligence, secs. 288-90; *Cooke* v. *Baltimore Traction Co.*, 80 Md. 551; *Shea* v. *St. Paul City Ry. Co.*, 50 Minn. 395.) Street railways have no exclusive right to the use of the part of the street covered by their tracks, but all persons have the right to use the street for the purposes for which streets are ordinarily used; nor had the defendant any rights superior to those of the deceased in that portion of the public street between the tracks. (*Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414, 426; *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409; *Swain* v. *Fourteenth Street R. R. Co.*, *supra; Dallas Rapid Transit Ry. Co.* v. *Dunlap*, 7 Tex. Civ. App. 471; *Rascher* v. *East Detroit etc. Ry. Co.*, 90 Mich. 413; 30 Am. St. Rep. 447; *Cincinnati Street Ry. Co.* v. *Whitcomb*, 66 Fed. Rep. 915; *Galveston City Ry. Co.* v. *Hewitt*, 67 Tex. 473; 60 Am. Rep. 32; *San Antonio Street Ry. Co.* v. *Mechler*, Tex. Civ. App., Nov. 28, 1894.) It was the duty of defendant to employ competent and careful persons to manage its

cars, and it was the duty of the motorman in charge of the car to exercise proper care, and keep a proper lookout, in order to avoid, if possible, all accident and injury. (Booth on Street Railways, secs. 305, 306; *Shea* v. *Potrero etc. R. R. Co.*, *supra; Swain* v. *Fourteenth Street Ry. Co.*, *supra; Defour* v. *Central Pac. R. R. Co.*, *supra; Sears* v. *Seattle etc. Ry. Co.*, 6 Wash. 227; *Dallas etc. R. R. Co.* v. *Dunlap*, *supra; Pope* v. *Kansas City etc. Ry. Co.*, 99 Mo. 400.) A recovery may be had in an action against a railroad company for injuries sustained, notwithstanding the negligence of the person injured exposed him to the danger which resulted in his injury, if the defendant, after becoming aware of his danger, failed to use ordinary care to avoid injuring him. (*Esrey* v. *Southern Pac. Co.*, *supra; Williams* v. *Southern Pac. R. R. Co.*, 72 Cal. 120; *Needham* v. *San Francisco etc. R. R. Co.*, 37 Cal. 409; *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409, 423; *Holmes* v. *South Pac. Coast Ry. Co.*, 97 Cal. 161; *Watson* v. *Minneapolis Street Ry. Co.*, 53 Minn. 551; *Omaha Street Ry. Co.* v. *Duvall*, 40 Neb. 29; *Lake Shore etc. R. R. Co.* v. *Miller*, 25 Mich. 274; *Denver etc. Transit Co.* v. *Dwyer*, 20 Colo. 132; *Inland etc. Co.* v. *Tolson*, 139 U. S. 551; *Galveston City Ry. Co.* v. *Hewitt*, *supra; Fernandez* v. *Sacramento City Ry. Co.*, *supra; Wilson* v. *Southern Pac. R. R. Co.*, *supra; Davies* v. *Oceanic S. S. Co.*, *supra.*) Under the circumstances of the case, the conduct of the motorman was willful, wanton, and deliberate. (*Esrey* v. *Southern Pac. Co.*, *supra; Swain* v. *Fourteenth Street R. R. Co.*, *supra; Montgomery* v. *Lansing City etc. Ry. Co.*, 103 Mich. 46; *Sears* v. *Seattle Consolidated etc. Ry. Co.*, *supra; Orr* v. *C. R. & M. C. Ry. Co.*, Iowa, April 6, 1895; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408.)

THE COURT. — Upon further consideration of this cause in Bank, we adhere to the views expressed in the opinion filed in Department One, and, for the reasons therein given, the judgment and order are reversed.

TEMPLE, J., dissenting.—I dissent. This action was for damages for the death of Charles E. Everett, which was caused by a car of defendant. The main question presented on this appeal is whether this court can say, as matter of law, that the deceased was guilty of negligence which contributed proximately to his injury, in the face of the verdict of the jury, which is in favor of the plaintiffs, who are heirs at law of the deceased.

This is not a question as to what the evidence taken as a whole may be considered fairly to establish, or whether the facts, which we think plainly established by the evidence, show such negligence on the part of the deceased, but whether the conclusion of the jury could be rationally drawn from the evidence. And this must be determined, also, in view of the exclusive province of the jury to pass upon the credibility of the witnesses.

The facts may be stated thus: Deceased was an experienced bicycle rider about forty years old, in the possession of all his faculties, and familiar with the operation of the street railway. At least, he lived in the vicinity and had often been on this street.

Defendant had two tracks on McClintock avenue, there being seven and one-half feet between them. It was in the suburbs of Los Angeles, and the street was unfinished. Outside of the two tracks the ground was higher and too rough for travel on foot or on bicycles. The rails were raised some two inches above the road-bed.

Just before the accident deceased was seen on the northbound track going south. He was going at the rate of six miles per hour. On the southbound track a car was following at the rate of ten miles per hour. At that time a car was approaching on the northbound track, and, although it was not so near as the car which was approaching from behind, deceased turned, evidently to avoid it, to the southbound track, and in front of the nearer car on that track. At about a block and a half away the motorman of the southbound car rang his bell " good and hard " to warn deceased of his dan-

ger.    Upon this subject the motorman testified as follows:

"I was the motorneer in charge of car No. 109 at the time Mr. Everett was killed.    When I first observed him I was about two blocks away from him, I should think. I just turned around the curve off from Olin on to McClintock avenue.    He was on a wheel, on the northbound track.    I was on the southbound track.    He traveled on the northbound track I should think a block and a half or two blocks; something like that.    Then he crossed over on to our track, the southbound track. When he crossed over he was about a block and a half or two blocks ahead of me.    We were going considerably faster than he was.    I did not notice him look back.    I saw him all the time after I left the curve. I had been ringing the bell off and on ever since I left the curve at Olin street.    I rang the bell for the purpose of giving notice to the man on the bicycle.    I should think I was then a block away from him, when I was ringing it good and hard.    I had been ringing it for about two blocks constantly.    When I rang the bell purposely to give him notice I might not have been as far as a block away from him.    He did not do anything when I rang, in regard to looking back, but kept right on.    I called out to him when I was within about fifty feet of him, I should think.    I do not remember what I said.    When I was within about thirty or fifty feet of him I threw off my currents and applied my brakes, and reversed my car, and did all that I could to stop the car from that time.    I attempted to stop the car because I didn't think he heard me.    I supposed all the time he did until that time.    Immediately before I put on the brakes I rang the bell as hard as I could.    Other persons called out to him besides myself; everybody in the front end of the car.    There was a big crowd there, and a heavy load on the train.    They called out as loud as they could hullo.    He paid no attention to them.    If he was a man of good hearing he must have heard the noise.    There was enough noise made in front of that

car to raise the dead, I should think.   He made no attempt to get off the track at all that I saw.   I did not attempt to stop my car sooner because I expected every minute to see him get out of the road.   It is the general custom of people riding bicycles to get out of the road. They generally manage to get out of the road.   There is no difficulty in a man getting out of the road if nothing is in the way."

On cross-examination this witness said: " When I first began to ring my bell to warn him I must have been a couple of blocks away, and I kept on ringing it. He paid no attention to the ringing of the bell, and did not seem to know that I was coming behind him.   I did not slacken speed at that time."

The southbound train was not so near as the northbound train, but its passengers called to deceased, and made signs to him, trying to warn him of his danger. The northbound train had not passed when the accident occurred, but stopped on the happening of the accident something like one hundred feet away.

The motorman testified that he reversed the current thirty or fifty feet before the car struck the deceased, but several other witnesses testified that speed was not slackened at all till it struck the deceased, and some that the current was reversed some five feet away. There was testimony to the effect that the car moved from fifty to sixty feet before it was stopped after the accident.   Upon this question of distance there was a conflict.

Upon the day of the accident more cars than usual were run on this road because of races.   There was a strong wind from the south, which would tend to prevent the deceased from hearing.

Now, Everett was guilty of gross negligence in going upon the southbound track without looking to see if a car was dangerously near.   But he was not a trespasser there, and, in my opinion, he had just the same right to believe that if a car did approach from behind it would not run over him, but would stop or slacken its

speed, and see that he did have fair warning and an opportunity to get out of the way, that the motorman would have had to suppose he would leave the track and avoid the danger, if it had been obvious that Everett knew the true state of affairs. The real question is, however, admitting the negligence of Everett, within the rule applicable to such cases, Was it the proximate cause of the injury? or rather, whether the jury could not reasonably draw any other conclusion from the evidence than that his negligence contributed proximately to the injury.

The rule upon this subject is thus stated by Mr. Justice Sanderson in *Needham* v. *San Francisco etc. R. R. Co.,* 37 Cal. 409, as follows: " Therefore, if there be negligence on the part of the plaintiff, yet, if at the time when the injury was committed, it might have been avoided by the defendant in the exercise of reasonable care and prudence, an action will lie for the injury."

The rule is stated with equal clearness by Mr. Justice Garoutte in *Esrey* v. *Southern Pac. Co.,* 103 Cal. 541. He said: " By her own negligence she placed herself in a position of danger, but defendant was aware of her danger, and did not exercise ordinary care to protect her from the danger that surrounded her. Under these conditions the law gives the injured person a right of action, and this right of action is based upon the principle that a failure to exercise ordinary care by a defendant under such circumstances amounts to a degree of reckless conduct that may well be termed willful and wanton; and when an act is done willfully and wantonly, contributory negligence upon the part of the person injured is not an element which will defeat a recovery. Some text-writers and courts declare the same principle in another form, by holding that under these circumstances the contributory negligence of the party injured is not the proximate cause of the injury, but that the negligence of the defendant, being the later negligence, is the whole proximate cause. As has been said by one of our reviews: ' The party who last has a

clear opportunity of avoiding the accident, notwith-
standing the negligence of his opponent, is considered
solely responsible.' "

Upon this question plaintiff contends that the most
reasonable conclusion from the evidence is, that the
motorman knew a sufficient time before the car struck
the deceased that he was unheeding, and did not know
of his danger, and that Everett would inevitably be in-
jured unless he slackened his speed.  To sustain the
verdict it is only necessary to find that the motorman
should have believed from what he saw that injury was
likely to happen unless the speed was slackened.

The defendant must maintain the position that there
was no negligence on the part of the motorman because
he believed, and notwithstanding what he knew had a
right to presume, that the deceased either knew of his
danger or would discover it in time to leave the track
before injury resulted.

I have carefully examined the evidence, and I believe
the conclusion reached by the jury is fully warranted
by a preponderance of the evidence.  And, if we apply
the rule which has heretofore always obtained in such
cases, I am unable to understand how anyone can reach
the opposite view.  It is, of course, true that there is
evidence which will warrant a statement more favorable
to the defendant than that which I have stated, but even
upon the view most favorable to the defendant which
can be drawn from the evidence, in my opinion it is
plain that the motorman must have actually known
that deceased was unheeding long enough before the
injury to have slackened his car sufficiently to have
prevented the injury.  To do this it would only have
been necessary to have reduced the speed to six miles
per hour from ten miles per hour.  If, as defendant
claims, the motorman had attempted to stop when
within twenty feet of deceased, he had then fifty feet
within which to stop before the injury could occur; for
while the car moved ten feet Everett moved six.  This
supposing that both continued at the same speed, but

as soon as the car commenced to slow up the difference of speed would diminish; and, if the car had slowed a little, Everett would have escaped.

The motorman testified that he commenced ringing good and hard a block away, and had rung off and on from the time he was two blocks away. If we assume this distance to be four hundred feet, he must have thus pursued Everett for one thousand feet, and during all that time, according to his own testimony, Everett did not look back, and did not seem to know that he was approaching from behind.

Several witnesses testified that when about forty feet away a passenger called to the motorman that, if he did not stop, he would kill the man. After that time, according to the testimony, the car ran one hundred feet before it struck the deceased.

In fact, I cannot doubt that had the motorman made an honest effort to stop the car when five feet away Everett would not have been injured. Even from that point the car ran twelve and one-half feet before it struck Everett, and, of course, as soon as the speed diminished the discrepancy of speed would be less. If these cars cannot be so handled, it is criminal to allow their use on the streets. I think it matter of common knowledge that they can be.

Now, could this court say that the jury could not reasonably conclude from this evidence that, at some point of time when the injury could have been avoided, the motorman knew, or should have known, that Everett was unheeding, and that injury was likely to result unless he checked his speed? Can we say, as matter of law, that such was not the fact?

It has been suggested that the rule invoked does not apply when the person injured is negligent at the very time of the injury, as it is claimed Everett was here. I deny that there is any such qualification of the rule beyond this, that such negligence on the part of plaintiff may contribute proximately to the injury. In such case the defendant would not be the last who had a clear

opportunity to avoid the injury. If Everett did not know of his peril, he had no such opportunity. If one lies upon a railway track to sleep, and is injured, his negligence contributes to the injury. But the rule has been held to apply to such a case. (*Williams* v. *Southern Pac. R. R. Co.*, 72 Cal. 120.) On no question are the authorities more numerous, and I think it will be found that in a vast majority of them such was the case as fully as in the case at bar. One who does not know of his danger does not have the last opportunity to avoid the injury.

If these views be correct they furnish a complete answer to the contention of appellant that the motorman was guilty of no negligence, and that the accident was due wholly to the negligence of the deceased. For, conceding gross negligence on the part of Everett in going upon the track and continuing there without looking back, still, if—as we must concede to the verdict—the motorman knew, as we must also concede, that he was ignorant of his danger, and after such knowledge the motorman could, by the use of ordinary diligence, have prevented the injury, defendant is liable. I am convinced that all these propositions are established in favor of the verdict by a clear preponderance of the evidence.

It is really not necessary to discuss the rule by which the conduct of Everett should be tried, but I cannot permit the apparent claim that the same rule which has become crystallized into a rule of law in regard to crossings of steam railway tracks applies here, to pass unchallenged. Negligence is always relative to circumstances, and the circumstances of the two cases vary greatly.

It is true, a general statement as to the duty of those using the public highways may be made which will include all cases. All such persons are bound to use ordinary care to avoid injuring others, and to escape injury to themselves, and may expect the like care from others. What conduct this rule would dictate in any

given case will depend upon the special facts of that case.

One has no right to obstruct unnecessarily a street-car, but he has no better right to obstruct any other vehicle. As to all he is bound to use the same diligence not to delay. On the other hand, all are bound to use ordinary care not to obstruct or injure him, and he may use the street relying upon such diligence on the part of others, including those in charge of the street-cars. If one were to step blindly into the street closely in front of a push-cart and receive injury, his negligence would deprive him of a right of action. It was his duty to look and avoid danger. The same duty, and no other rests upon him as to a street-car, but, as the danger is greater, and the conditions different, a different degree of diligence may be required.

The rule in regard to a steam railroad, requiring that a person approaching a crossing must stop, look, and listen, implies that if a train is imminent he must stop until it passes. In such case it is not expected that the train will stop for him, and it would be unreasonable to require it. Not so as to street cars. As a hypothetical case, I may state that on Market street, in San Francisco, during a portion of every day four cars per minute pass on the cable road any given point. There are two other tracks upon the street also operated. The track is thronged with trucks, drays, express wagons, and other vehicles. They have frequent occasion to pass from one side of the street to the other. It is safe to say that at such time such crossing generally stops a car upon each track of the cable road. Yet they have a right to cross and to drive on the track, although a car is near at hand and will be required to stop. In other words, the car must beat its way along like any other vehicle in a crowded street. Neither should move so closely in front of another that a collision is likely to occur. All must use ordinary care not to obstruct others, and all may rely upon the use of that care on the part of others not to injure them. These considera-

tions do not similarly affect a train on a steam railroad, even at the crossings, for the train is not expected to wait for others to pass, and its velocity and momentum would ordinarily prevent it.

In conclusion, I wish to say, that in my opinion, if a man of ordinary prudence in the place of the motor-man would have seen that *perhaps* Everett was not aware of his danger, and that injury *might* occur unless he stopped his car, then it was his duty to stop and make sure.

I do not think the jury were misled to the injury of defendant, by any instruction given, and in my opinion the jury was fully instructed upon all points on which instructions were required by defendants.

Judgment and order should be affirmed.

HENSHAW, J., and BEATTY, C. J., concurred in the dissenting opinion.

The following is the opinion of Department One, rendered on the 9th of January, 1896:

VAN FLEET, J.—Verdict and judgment were for plaintiffs, and defendant appeals from the judgment and an order denying its motion for a new trial.

The action was by the widow and minor child of one Charles E. Everett, deceased, to recover damages for the death of the latter, caused by his being run over by an electric-car operated by the defendant on its street railroad in the city of Los Angeles, and alleged to have been through defendant's negligence.

At the conclusion of plaintiffs' evidence in chief, defendant moved the court for a nonsuit, on the grounds, substantially, that the evidence wholly failed to show negligence on the part of the defendant, but did establish affirmatively that deceased came to his death through his own negligence, contributing directly and proximately thereto. The court denied the motion, to which ruling defendant excepted, and this exception constitutes the only material question in the case.

The evidence in behalf of plaintiffs tended to show that the deceased, at the time of the accident resulting in his death, which was on October 17, 1894, was forty years of age, in good health, and in full possession of his faculties, having good eyesight and unimpaired hearing; he was an experienced rider of the bicycle, had owned one of those vehicles three or four years, and used it every day.   On the date in question, about 1 o'clock in the afternoon, or a little thereafter, deceased was on his bicycle, riding along McClintock avenue, in a suburb of Los Angeles known as University, on a portion of the street where ran a double line of defendant's railway, one line used for southbound and the other for northbound cars; he was going south at the time, and traveling at the rate of about six miles an hour; following him, and going in the same direction on the southbound track, was a train of defendant's cars, consisting of an electric motor car and a trailer, heavily loaded with passengers going out to the racetrack; this train was running at its ordinary rate of about ten miles an hour.   When deceased was first observed by those on the train, he was between a block and a half and two blocks ahead of the train, and was riding between the rails of the northbound track; he continued on this track for some distance, when he crossed over to the southbound track, apparently to avoid an approaching car going north, and continued on his course, riding between the rails of the latter track.   At this time he was something over half a block in advance of the southbound train, but the latter was rapidly overtaking him, and when the northbound car passed him, which was at a point a short distance south of where the southbound train then was, passengers on the former, evidently noting the rapid approach of the train, called out a warning to deceased to apprise him of danger; and, at about the same time, when the train was within from twenty to forty feet from him (the estimates of the witnesses varying on this point), the motorman on the latter rang his gong, and, together with several of

the passengers, cried out to deceased to "get off the track," "look out," and other words of like import. These warnings, although distinctly heard by a witness standing on the street some four or five times as far from the train as deceased then was, were either unheard by him, or totally unheeded, as he was not observed to look back or turn his head, or attempt to turn or increase the speed of his bicycle; thereupon, the motorman, when within about ten to twenty feet of deceased, reversed the current and applied the brakes, and endeavored to stop the train, but did not succeed in time to avoid running deceased down, and he was struck by the motor, and killed.

At no time from the time he was first seen riding ahead of the train was deceased observed to turn his head or look back, until just as the train was upon him, when he partly turned his head and turned his wheel a little to the right, but not sufficient to get out of the way. University is a settled suburb of Los Angeles, laid out in blocks, crossed and intersected by public streets, and the point where deceased was killed was at the intersection of McClintock avenue with Thirty-seventh street. Deceased was not a resident of Los Angeles, but had been there for about a week, more or less, before the accident, stopping at the house of a relative on Thirty-ninth street, off McClintock avenue, south of Thirty-seventh street and the point where he was killed; during his sojourn he had been in the habit of riding back and forth to and from the city on his bicycle, and when on McClintock avenue would ride on the railroad tracks, as it was smoother for travel between the rails than on the outside, where the space was narrow and rough, and a poor road for the bicycle by reason of the condition of the street. At points on McClintock avenue the soil was sandy and had receded somewhat from the rails, so as to leave the latter in places standing a little above the surface of the street; but what the condition was in this respect at or in the immediate vicinity of the accident was not made to appear. At

the date in question, races were in progress at the race-track, situated south of the scene of the deceased's death, and, owing to the increased travel, extra cars were being run by defendant, and at shorter intervals than at other times; but whether the train which killed deceased was an extra or running on regular time was not shown. The motorman in charge of the train had been in the employment of defendant about two weeks; for the first ten or twelve days he was under instruction from an experienced motorman, and was then put in charge of a motor, and had been so employed some four or five days at the time of the accident. The statements of the witnesses vary considerably as to how far the train was from deceased when the motorman commenced ringing his alarm gong; a number of them show no recollection on the subject, but, taken as a whole, the evidence tends strongly to indicate that the gong was being sounded before the motorman and passengers commenced to call out to deceased to get out of the way. There is a like difference as to just when the brakes were applied, and whether the speed of the train was slackened any before the deceased was struck; the head end of the motor passed the point where deceased was struck between twenty and thirty feet, before the train came to a full stop, and the evidence tended to show that it could have been stopped in a shorter distance. There was also some evidence tending to show that the wind was coming from the southeast—at what velocity does not appear, but that it was calculated to deaden to some extent any sound in deceased's rear.

This is substantially the case made by the evidence in behalf of plaintiffs upon the points material for our consideration.

It can scarcely be made a question in the case, indeed, we do not understand it to be seriously controverted, but that the conduct of the deceased under the circumstances narrated constituted negligence on his part in the highest degree, and such as, standing alone, would necessarily preclude a recovery for his death. In

walking or riding along a line of railway, where cars or trains are passing, or likely to pass at short intervals, one, while in a position to be endangered by such vehicles, must pay attention to his surroundings, and employ his natural faculties, and exert due diligence to avoid such danger; he must listen and look to ascertain whether danger is threatened by his situation, and a failure so to do constitutes negligence *per se.* This principle is settled by a practically unbroken line of decisions in this and other states. One or two of the latest expressions upon the subject by this court in cases where the rule is fully discussed, and authorities cited, may be given as aptly stating and applying the doctrine. In *Kenna* v. *Central Pac. R. R. Co.,* 101 Cal. 26, it is said: " It is a fixed rule that it is the duty of anyone when attempting to cross a railroad track upon a highway to be vigilant, to look and to listen before attempting to cross, and a failure to do so is regarded as such negligence on his part as to preclude a recovery. (*Glascock* v. *Central Pac. R. R. Co.,* 73 Cal. 137.) With greater reason does the principle of this rule apply to one who is traveling laterally along the route of a railroad, and knows that engines will soon follow. ' It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risk of the perils he may encounter.' " (Citing a large number of cases.)

In *Holmes* v. *South Pac. Coast Ry. Co.,* 97 Cal. 161, where the person for whose death it was sought to recover was killed while walking along the railroad track near a station, while waiting for the train which ran him down, and when it appeared that deceased did not look out for the approach of the train, which he could have seen in time to get out of the way, the court say: "A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion and who is possessed of ordinary intelligence that it is not safe to walk upon it, or near enough

to it to be struck by a passing train, without the exercise of constant vigilance in order to be made aware of the approach of a locomotive and thus be enabled to avoid receiving injury; and the failure of such a person so situated, with reference to the railroad track, to exercise such care and watchfulness and to make use of all his senses, in order to avoid the danger incident to such situation, is negligence *per se.* The following are a few of many cases which might be cited to sustain this proposition: *Harlan* v. *St. Louis etc. R. R. Co.,* 64 Mo. 480; on rehearing, 65 Mo. 22; *Baltimore etc. R. R. Co.* v. *Depew,* 40 Ohio St. 121; *Kelley* v. *Hannibal etc. R. R. Co.,* 75 Mo. 138; *Glascock* v. *Central Pac. R. R. Co., supra.*"

Nor is there any distinction, in the application of this doctrine, between an electric or cable line operated upon the public streets of a city, and that of an ordinary steam railway operated upon the right of way of the corporation. While the deceased had the undoubted right to a reasonable use of the public street, notwithstanding its occupancy by defendant's tracks, he could not ignore or disregard the rights of the latter in the premises, nor neglect to take reasonable precautions for his own safety; if he chose to make use of the part of the street occupied by the tracks, it was his duty to look out for and endeavor to avoid the dangers incident to such use. In *Haight* v. *New York Cent. R. R. Co.,* 7 Lans. 11, speaking of this rule, the court say: "It is said by counsel for plaintiff that, while this may be the rule in regard to steam railways, it cannot be applied to street railways. In *Carson* v. *Federal Street etc. Ry. Co.,* 147 Pa. St. 219, 30 Am. St. Rep. 727, it was held that failure to look for approaching cars on the part of one about to drive across the tracks of an electric street railway company is such contributory negligence as will prevent his recovery for injuries received by colliding with a car. The court said: 'If, by looking, the plaintiff could have seen and so avoided an approaching train, and this appears from his own evidence, he may be properly nonsuited.' In *Ward* v. *Rochester etc. Ry. Co.,* 17

N. Y. Supp. 427, it appeared that plaintiff's intestate was fatally injured while attempting to drive across a street railway track. There was evidence that at any time before reaching the track deceased, by a glance, could have informed himself of the approach of the car, but that he drove onto the track without looking in either direction. It was held that he was guilty of contributory negligence. In *Creamer* v. *West End Street Ry. Co.*, 156 Mass. 320, 32 Am. St. Rep. 456, the supreme court of that state held that where a person stepped from a horse-car at the junction of two streets, and immediately started to cross the track of an electric road, without looking or listening, and was run over by the electric-car running at the rate of fifteen miles an hour, there could be no recovery, because the deceased was not exercising due care. We see no more reason for applying the rule that one must look and listen before crossing the tracks of a steam railway than that one must look and listen before crossing a street-car track upon which the motive power is electricity or the cable." (See, also, *Bailey* v. *Market Street Cable Ry. Co.*, 110 Cal. 320.)

When the evidence discloses a failure to take such reasonable precautions for one's own safety, it constitutes negligence *in law*, and is not a question to be submitted to the jury.

This brings us to the only other consideration arising: Does the evidence tend to show such negligence on the part of defendant, contributing to the death of deceased, as would in law authorize a recovery, notwithstanding the negligence of the deceased? We find nothing in the evidence to sustain this view. The case is not like one where the injured party is discovered in time lying or standing upon a railroad track under such circumstances as to make it doubtful whether he can or will get out of the way; or where one is seen attempting, either on foot or otherwise, to make a crossing; or passing along or on its track over a bridge or narrow causeway, or in a deep cut or tunnel, where to turn aside

would be either dangerous or impossible, or under other circumstances of similar character. In such instances it may be conceded that the driver of the engine or motor would not be justified in law in proceeding without effort to stop his vehicle up to the point of collision. Persons cannot be recklessly or wantonly run down on a railroad track, however negligent themselves, where the circumstances are such as to convey to the mind of a reasonable man a question as to whether they will be able to get out of the way. But the evidence has no tendency to make such a case. Here the deceased was in full and open view of the approaching train for several blocks, and had perfect opportunity and ability to apprise himself of its coming; he was upon a swift and noiseless vehicle, which, as a matter of common knowledge, can be made with very little effort, under a rider of ordinary strength and experience, to attain a much higher rate of speed than that with which the cars were progressing; and which, furthermore, is susceptible by a mere pressure of the hand to turn aside instantly—in much less time, indeed, than a pedestrian could step aside—so as to completely avoid an object no wider than a street-car. He was upon level ground, and assuming that the surface was too rough, or the space too narrow outside the railroad tracks for him to safely turn that way, there was nothing, so far as appears, to prevent his return to the other track, or to the space between the tracks; in fact, he had but a few moments before crossed from one track to the other to avoid a like danger, and had been seen to do so by the motorman on the train. Under these circumstances, we think it perfectly clear that the latter was justified, reasoning in the line we have suggested, in keeping on his course, and assuming that the deceased, obeying the most ordinary dictates of prudence, had made himself aware of the approach of the train, and would either increase his speed, or turn aside in time to avoid the danger which threatened him. In *Holmes* v. *South Pac. Coast Ry. Co.*, *supra*, it is said: " As the deceased was a man of mature

years, and nothing to indicate that he was not able to take care of himself—as he was in fact—the engineer might reasonably believe that he knew of its approach, and would, in obedience to the ordinary instinct of self-preservation, move away from the track before being over-taken by the engine. (*Lakeshore etc. R. R. Co.* v. *Miller,* 25 Mich. 279." See, also, *Campbell* v. *Kansas City etc. Ry. Co.,* 55 Kan. 536. The motorman was not required to assume that the deceased would continue his negligent conduct to a point which would endanger his life or limb, and it was not negligence in the driver, under the circumstances, to indulge the presumption that the deceased would get out of the way, up to the last moment.

There is nothing in the circumstances to indicate any wantonness or recklessness on the part of the engineer, or that he did not take all the precautions to warn the deceased, and to stop his train, that would have been suggested to one more experienced, or to any other reasonable mind.

But, were it to be conceded that the evidence disclosed a case tending to show negligence on the part of defendant's servants, the plaintiffs could not recover under the circumstances of this case. The rule which renders a defendant liable for injuries, notwithstanding some negligence on the part of the plaintiff or the person injured, can only apply "in those cases where such negligence was the remote, and not the proximate, cause of the injury—that is, where the negligent acts of the parties are independent of each other, the act of the person injured preceding that of the defendant." (*Holmes* v. *South Pac. Coast Ry. Co., supra.*) In that case, quoting from *O'Brien* v. *McGlinchy,* 68 Me. 552, it is said: "But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have

been avoided by the use of ordinary care at the time by the defendant. This rule applies usually in cases where the plaintiff or his principal is in some position of danger from a threatened contact with some agent under the control of the defendant, *when the plaintiff cannot, and the defendant can, prevent the injury. . . . .* But this principle cannot govern where both parties are contemporaneously and actively in fault, and, by their mutual carelessness an injury ensues to one or both of them." (See, also, *Hager* v. *Southern Pac. Co.*, 98 Cal. 309; *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541.) The rule can never apply to a case where, as here, the negligence of the party injured continued up to the very moment of the injury, and was a contributing and efficient cause thereof. For it is apparent that, by the slightest care and effort on the part of the deceased, he could have put himself out of danger up to the last moment before he was struck.

Our conclusion is, that the plaintiffs did not make out a case entitling them to recover, and that the refusal of the trial court to grant the motion for nonsuit was error.

It may be added that an examination of the evidence on the part of the defendant serves only to strengthen the case as to the negligence of the deceased, and the absence of negligence on the part of the defendant, and makes it clear that the court should have granted defendant's request to instruct the jury to find for the latter.

It follows that the judgment and order must be reversed, and it is so ordered.

HARRISON, J., and GAROUTTE, J., concurred.

Rehearing denied.