[Sac. No. 2253.   In Bank.—October 17, 1917.]

MARY T. BASHAM, as Administratrix, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

NEGLIGENCE — RAILROAD — ACTION FOR DEATH — ACCIDENT AT STREET CROSSING—CONTRIBUTORY NEGLIGENCE.—Where a train running in a city at a speed that amounted to negligence, struck and caused the death of one who was driving over a street crossing, the deceased who went on the track without stopping to look and listen, and who did not hear or disregarded sharp blasts of the engine whistle which were given to indicate danger, was chargeable with contributory negligence precluding recovery unless there was also evidence that the fireman of the engine who had discovered the approach of the deceased and realized that the latter did not intend to stop or was unaware of his danger neglected to signal the engineer to apply the emergency brake, and that by reason of this neglect the accident happened.

ID.—INSUFFICIENT EVIDENCE—The evidence in the case is examined and found insufficient to prove negligence.

ID.—RAILROAD—PLACE OF DANGER—DUTY TOWARD PERSONS APPROACHING.—When a person is approaching danger from a moving train and reasonable warning of the danger has been given from the train, those in charge of the engine do not act unreasonably in not presuming that he will continue his approach, when it is obvious that he could at any time, with the least care, stop and avoid danger.

ID.—RAILROAD—LAST CLEAR CHANCE—NEGLIGENCE OF BOTH PARTIES.—The doctrine of "last clear chance" cannot govern where both par-

ties are contemporaneously and actively in fault and by their mutual carelessness an injury ensues to one or both.

ID.—EVIDENCE—BURDEN OF PROOF.—The burden is on the plaintiff to prove that the defendant after seeing the injured person in a position of danger failed to take proper care to avoid injuring him.

ID.—RAILROAD — CONTRIBUTORY NEGLIGENCE AS A BAR TO RECOVERY.— Where the negligently fast speed of a train and the negligent inattention of the injured person each contributed to and caused the injury, and such negligence of both continued and contributed actively to the result up to the very moment of the collision, the plaintiff cannot recover for the injury caused.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, and Henley C. Booth, for Appellants.

F. W. Henderson, and F. G. Ostrander, for Respondent.

E. W. Camp, Frank Karr, A. S. Halstead, A. R. Baldwin, and James E. Kelby, *Amici Curiae.*

SHAW, J.—This action was begun by Eva M. Coffey as administratrix of the estate of her deceased husband, O. A. Coffey, to recover damages caused by the death of her husband, alleged to have been the result of negligence of the defendants. The verdict was given for the plaintiff and the defendants appeal from the judgment.

After the taking of the appeal Eva M. Coffey died, and Mary T. Basham was duly appointed as administratrix of said estate, and she has been substituted as plaintiff herein.

The accident occurred in the city of Merced, on the main track of the Southern Pacific Railroad, at the crossing of R Street. The deceased was traveling on R Street from the north toward the south, toward said crossing, at the time the train approached the city of Merced. He was in a farm wagon, driving two horses and leading two others which were hitched to the rear of the wagon-bed. The bed was what is called a grain wagon-bed, composed of timbers and planks set upon the running gears, and not extending above the wheels. He was sitting about one-third of the way back from the front of the bed, either on a box or on some sacks.

The horses were gentle and entirely under control. They were walking at the rate of about three miles an hour. As the train neared the crossing of R Street the engineer whistled for the crossing at the usual place. The train had previously been going at very great speed to make up some lost time, having made up nine minutes of the time in the preceding fourteen miles. The track had a very slight down grade at that place, and at a point one mile from the station at Merced the steam had been shut off, and the train was running on its momentum. After shutting off the steam the brakes were applied at intervals to slacken the speed. At a point from eight hundred to one thousand feet from R Street the engine whistle was blown for the R Street crossing. The fireman was engaged in looking ahead for obstructions upon the track and giving directions to the engineer regarding them; the engineer was managing the machinery of the locomotive and brakes. These were their respective duties. At that time the fireman saw Coffey approaching the track on R Street, leaning forward, with the reins in his hands. The fireman said to the engineer, "Blow your whistle; there is a fellow coming over here and I don't know whether he sees us or not." The engineer then gave several sharp, short blasts of the whistle, as a warning of danger to attract the attention of Coffey. The train was then proceeding at a speed variously estimated at from fifteen to thirty miles an hour, and its speed was slackening as it proceeded. At the rate of thirty miles an hour it would take eighteen seconds to reach R Street. At the time the fireman first saw Coffey he, Coffey, was about one hundred feet from the main track on which the train was running. He continued to approach the track without increasing his speed, in the same attitude, until the team had reached a point some twenty or thirty feet from the track and the engine was within about one hundred and fifty or two hundred feet from the crossing. Coffey was then giving no sign that he observed the train or that he intended to stop before driving upon the track. That instant the fireman for the first time realized that he might not be aware of the approaching train. He cried to the engineer, "Hold her; that guy ain't going to stop." The engineer immediately applied the emergency brake and stopped the train as quickly as it could be done. Coffey made no move indicating his knowledge of the approaching train until

his horses had stepped upon the track; then, seeing his danger, he arose in the wagon-bed, grasped a pitch-fork, and began striking the horses to hurry them up. He failed to get across and the engine struck the rear wheels of the wagon, the collision resulting in his death.

It is not seriously disputed that the engine was running at a rate of speed that amounted to negligence at that point in the city of Merced, nor is it seriously disputed that Coffey was guilty of almost gross negligence in going upon the track without having observed the coming of the train, without stopping to listen for its approach, and without hearing the sharp blasts of the whistle to indicate danger. Admitting negligence by the defendants, it must be also admitted that the negligence of the deceased contributed to the accident, and would prevent a recovery unless it can be said that there was sufficient evidence to sustain a finding that, after the fireman had discovered the approach of Coffey, and had realized that he was probably not intending to stop before going upon the track, or when, as a reasonable man, from the conduct of Coffey, the fireman should have realized that he was either unaware of his danger or indifferent thereto, and did not intend to avoid it, the fireman himself neglected to give the signal to the engineer to apply the emergency brake, and that because of this neglect the accident happened.

We do not think it can be said that the evidence is sufficient to prove such negligence by the fireman. It was the duty of Coffey in the exercise of ordinary care, when approaching the railroad track, even at the slow speed at which he was going, to stop and look and listen for the approach of trains. His rate of travel was so slow that it is obvious that he could have stopped at almost any moment up to the time when his horses came within the line of travel of the railroad cars, and by so doing have avoided all danger. At the distance of twenty feet from the track, and from that time until he reached it, he could have seen the train if he had simply turned his head in that direction, and could have stopped his team within a very few feet. The fireman had a right to assume that he would stop before reaching the track, until his conduct gave reason to believe that he would not, and until that moment the fireman cannot be said to have been guilty of negligence in failing to call for the emergency brake.

When a person is approaching a place of danger, and all the warnings of the danger have been given that reasonable care requires, those in charge of the dangerous engine, seeing him thus acting, are not obliged to presume, and it cannot be said that they act unreasonably in not presuming, that the person will continue in his approach until he gets into the very place of danger, when it is obvious that he could at any time, with the least care, stop and avoid it. The doctrine of the last clear chance assumes that both the plaintiff and the defendant have been guilty of negligence, the combination of which produces the danger, and places the injured party in a predicament from which he cannot extricate himself, and that this predicament is known, or should be known, with the knowledge actually possessed, to the other party. It is not until this takes place that the duty of additional care devolves upon the person causing the injury. The person thus causing the injury cannot rely upon dullness to excuse him for not knowing that the other party was not aware of danger. He must be held to know this when the circumstances of which he has knowledge are such as would create in the mind of a reasonable man a belief, or a reasonable fear, that the other party was in such precarious situation. (*Thompson* v. *Los Angeles etc. Co.*, 165 Cal. 748, [134 Pac. 709]; *Harrington* v. *Los Angeles etc. Co.*, 140 Cal. 523, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Everett* v. *Los Angeles etc. Co.*, 115 Cal. 125, [34 L. R. A. 350, 43 Pac. 207, 46 Pac. 889].) The persons thus operating a train have the right to presume that the other party will exercise his faculties and use reasonable care for his own safety. In *Holmes* v. *South Pacific etc. Co.*, 97 Cal. 168, [31 Pac. 834], the facts were that, as the train approached, the injured person was walking alongside of the track and very close thereto. Just before it reached him the alarm whistle was sounded, and he stepped upon the track and was killed. The bell was ringing all the time. The court said that the persons in charge of the train were not guilty of negligence in not sooner sounding the alarm whistle, and that, "as the deceased was a man of mature years, and nothing to indicate that he was not able to take care of himself,—as he was in fact,— the engineer might reasonably believe that he knew of its approach, and would, in obedience to the ordinary instinct for self-preservation, move away from the track before being

overtaken by the engine." And with respect to the last clear chance, the court said (97 Cal. 170, [31 Pac. 836]): "The defendant was not the only one who could have prevented the accident, but, on the contrary, if the deceased had himself used ordinary care at the time, he could not possibly have been harmed by defendant's locomotive, which was confined to the narrow track upon which it ran. Up to the very moment that he was struck by the engine, it was within his power to escape the injury which he received by simply moving to a place of safety upon the sidewalk, and he would have realized the necessity for such action on his part but for his own negligence at the time in not looking or listening for the approach of the train." Upon the facts, the court applied the principle that the doctrine of the last clear chance "cannot govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them."

In *Green* v. *Los Angeles etc. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719], the injured person was walking along a path which ran across the track, and was approaching the track thereon at the time the defendant's locomotive came along. The path crossed the track at an angle of thirty degrees, and her course was on the path in the direction which caused her face to be turned partly away from the approaching train. The court says that the findings in effect declare "that the engineer saw Bessie Green approaching the track along a path which crossed it; that she gave no evidence of knowledge of the approach of the train; and that, notwithstanding such fact, the engineer did not slacken or lessen the speed of the train, or attempt to give said Bessie Green warning of his approach.

"But during all this time, it will be observed, Bessie Green was in a position of absolute safety; she was not upon the defendant's track, but walking upon the pathway approaching it. There was nothing to indicate to the engineer that she would leave that place of safety and put herself in one of danger. The mere fact that she gave no evidence of a knowledge of the approach of the train while walking along the pathway toward the track did not indicate to the engineer that she was about to place herself in a position of peril. It is a matter of common observation that thousands of people daily cross in front of trains and approach crossings for that

purpose, without giving any indication that they are aware of the coming of the train. They proceed, determining for themselves whether they have sufficient time to make the crossings safely or not, solicitous only for their personal safety, and giving no indication to the engineer whether they will hazard the risk of crossing or pause until the train passes by, or in any manner indicating that they are aware of the approach of the train, or are concerned about it. . . .

"There is nothing to indicate that, as far as the engineer knew or could have known, Bessie Green might not have been perfectly well aware of the approach of the train and still have given no indication or manifestation of that knowledge. The law cast upon her the duty of looking to see, when approaching the point of danger, whether there was a train in sight which might prevent her crossing the track in safety, and the engineer had a right to assume that she had taken the precaution which the law required to insure her own safety, was aware of the situation, and being in a place of safety would remain there and not pass to a point of danger."

The facts in this case are closely similar. Coffey's horses were approaching the train in a slow walk; they were under control, and did not appear to be in the least excited. The train was necessarily making considerable noise; it had just previously given several short, sharp blasts, to indicate danger; it is conceded that the bell was ringing. Coffey could have stopped his horses within four feet of the track without being in danger, and doubtless could have accomplished the stop within a space of two or three feet before reaching that point, and the fireman had the right to assume, until the conduct of Coffey indicated the contrary, that he knew of the approaching train and would stop before driving into its path. The fireman himself testified that "time and again you will see a team driving along and they pay no attention to your signals. They will come up and stop in the clear of the track and wait for you to go by." This testimony accords with what the court says is common knowledge in the quotation just made. There is no evidence to contradict these facts, and no circumstances which throw doubt upon them.

There was, to be sure, some discrepancy in the figures given by the different witnesses regarding the relative locations of the train and the wagon at the moment when the

warning signal was first sounded. Such variations in esti-
mates of distances are neither unusual nor surprising. But,
giving to the respondents the full benefit of the testimony
offered by them, we think the record was not such as to war-
rant a conclusion that the facts were *materially* different
from our statement of them. Granting that the train may
have been less than eight hundred feet from the crossing
when the warning signal was given, and that the fireman's
estimates of Coffey's location were not exactly accurate, it
appears from a fair consideration of the entire record that
the warning signals were sounded when Coffey was still in a
place of safety. The "last clear chance" doctrine can have
no possible application, unless there was evidence tending to
show that the fireman neglected to take steps which due care
would have required, when he saw the team and wagon in a
position which would have indicated to a reasonable man
that Coffey was already in danger, or was *immediately* about
to enter the danger zone. The testimony established beyond
question that Coffey was guilty of inexcusable want of care
in placing himself in peril. The burden of proving that the
defendant, after seeing him in such a position, failed to take
proper care to avoid injuring him, was on the plaintiff. She
seeks to sustain this burden by pointing to the testimony by
one or two witnesses, to the effect that the horses were already
on the track when the danger signals were blown, and that
the train was then within one hundred and fifty or two hun-
dred feet of the crossing. This testimony, vague and uncer-
tain at best, is contradicted not only by that of other wit-
nesses on both sides, but by the inherent probabilities of the
situation. Even if it be accepted as sufficient to form the
basis of a finding, it does not meet the needs of the plaintiff's
case, unless supplemented by evidence that the fireman was
at fault in not then doing what a reasonably careful man
would have done to avert the impending collision. It is
argued to this end that the testimony of the fireman and the
engineer shows that the fireman did not call for the appli-
cation of the emergency brake until some period of time had
elapsed after the giving of the warning signal. During this
interval, it is said, the fireman failed to take any steps to
slow the train so as to permit Coffey to cross in safety. The
argument thus made assumes the truthfulness of the fire-
man's testimony with respect to the directions to the engineer

to blow the whistle and apply the brakes. It assumes, on the other hand, that he did not testify truthfully to the conditions existing when he gave the respective orders. The hypothesis is that the brakeman told the engineer, in effect, that a man was approaching the track, and that a whistle should be blown to warn him to stop, when he saw the man already on the track, or so near as to make it plain that he would presently be on it. If the situation was as testified to by the fireman, his statement to the engineer was in accord with the facts, and his conduct was reasonable and intelligible. If the situation was as plaintiff now claims, the fireman's direction to the engineer was obviously futile and meaningless. It would require an unduly strained construction of the evidence to hold that the jury was warranted in accepting the part of the fireman's testimony which described what he did, and rejecting that part which gave purpose and sense to his actions. Moreover, if the fireman's second warning was so soon after the first, and when the train was so near the crossing as this theory implies, the discovery that Coffey was going to cross the track must have come too late, and when it was made the collision had already become inevitable. The failure to discover it sooner might in that case constitute original negligence, but it would not be a ground for applying the doctrine of the last clear chance. The record convinces us that there is no substantial evidence that the train crew failed to do all that reasonably ought to have been done to avert a collision, as soon as it was, or should have been apparent that the driver was not stopping his team in a place of safety.

With respect to the engineer who was operating the train and Coffey, the negligently fast speed of the train, and the negligent inattention of Coffey, each contributed to and caused the injury, and each continued actively to that result up to the very moment of the collision, thus bringing the case within the rule stated in *Holmes* v. *South Pacific etc. Co.*, 97 Cal. 168, [31 Pac. 834]. The plaintiff cannot recover for an injury so caused.

With regard to the last clear chance doctrine, it cannot be said that the fireman was guilty of negligence in failing sooner to realize that Coffey was probably oblivious of his danger. The staccato notes of the danger whistle just then sounded, as the evidence shows, had attracted the attention

and aroused the alarm of almost everyone in the vicinity, although none of them had as much need or occasion to be alert thereto as Coffey. The bell of the engine was continuously ringing. The moving train itself must have made considerable noise. The horses were in a slow walk. The lines were in Coffey's hands. The horses were under his control. He could have come to a standstill in a second. Under all these circumstances it would be extremely unreasonable for anyone to suppose that he was unaware of the approaching train, and did not intend to stop before reaching the track, as he could easily have done, and as is the frequent custom. When the fireman did, nevertheless, begin to entertain a fear that Coffey was inattentive, he at once gave the urgent order to the engineer to stop. It cannot be said either that he did realize the danger sooner, or that, in reason, with his knowledge, he had cause to realize it sooner. Hence the last clear chance doctrine never came into operation, and the case comes within the scope of the case of *Green v. Los Angeles etc. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719].

This conclusion renders it unnecessary to determine the other questions presented by the record and argued in the briefs. The evidence was insufficient to support the verdict.

The judgment is reversed.

Henshaw, J., Sloss, J., and Melvin, J., concurred.

ANGELLOTTI, C. J., dissenting.—I dissent.

I concur in what is said in the opinion on the question of the negligence of the deceased, and I have no objection to the statements as to the law in regard to the last clear chance doctrine. But it does seem to me, after a full consideration of the record, that the evidence was such as to sufficiently support the conclusion of the jury and trial judge that facts existed which make the Railroad Company liable under the last clear chance doctrine, and that the reversal of this judgment is in violation of our well-settled rule that this court will not interfere with the conclusion of the jury and trial court on questions of fact where the evidence is substantially conflicting.

There was much testimony as to the giving of the warning signal, and so far as its character is concerned there is no

conflict in the evidence. The short, sharp blasts of the loco-
motive apparently attracted the attention of and alarmed the
whole neighborhood. But on the question of the distance of
the locomotive from the crossing at the time the first of these
blasts was sounded, as well as on the question of the distance
of Coffey therefrom, there is much conflict in the evidence,
some of the testimony being substantially to the effect that
the locomotive was within two hundred feet and Coffey just
beginning to cross, while other testimony was to the effect
that he was then within about twenty feet of the track, the
fireman's testimony placing him still farther away. Of
course, with the testimony conflicting on these points, the
jury were not bound to accept as correct the evidence of the
engineer and fireman that the warning was given as much
as eight hundred feet west of R Street. They might fairly
conclude, in accord with the evidence to that effect, that the
train was then only two hundred feet from the crossing, and
that Coffey, at least so far as the heads of his horses were
concerned, was already practically within the danger zone.
According to the evidence of the fireman, Coffey showed no
indication of knowledge of the approaching train until the
front wheel of the wagon was about to go over the north rail,
but sat with his head down, jogging along at the same gait,
until that time. This situation is absolutely inconsistent
with any theory that the danger blasts were sounded at as
great a distance from R Street as eight hundred feet, for it
is incredible that Coffey would not have heard them, and
certainly the jury may fairly have concluded that he did
hear them when they were blown, and as soon as he could
get at it adopted the only course apparent to him of avoiding
a collision. That Coffey was not asleep is evidenced by the
testimony that he had driven out around the projecting car
on Track No. 5. It is undisputed that the locomotive struck
the rear wheel of the wagon, which was some twenty feet
from the heads of the horses. The jury may well have con-
cluded that there was no increase in Coffey's rate of speed at
any time before being struck, for although at *the very last*
he did his best to urge his team forward, there was testimony
that at least one of the led horses at the rear held back, and
in the nature of things it would take a moment or two for
the horses at the rear to respond to the sudden start of the
horses in front, even if they did not hold back because

frightened by the train, which was then so near at hand. At that rate he would have traveled in five seconds only about twenty-two feet. I think it is apparent from the record that there is sufficient support for a conclusion by the jury that the danger blasts were not commenced until the train was within two hundred feet of the crossing, and that at that time Coffey was already in a position of danger. Indeed, it is my opinion, after an exhaustive consideration of the record, that the substantial weight of the evidence is to this effect.

If this was apparent to the fireman, or should have been apparent to him as a reasonable man with the knowledge he actually had, it was incumbent on him to do what he could then reasonably do to avoid the threatened injury. For the consequences of any neglect on his part in this regard, defendant Railroad Company would be liable under the last clear chance doctrine. It must be accepted as sufficiently established by the evidence of both fireman and engineer that the fireman did not call upon the engineer to stop the train or reduce the speed immediately upon the giving of the danger blasts, and that there was no application of the emergency brake for some appreciable time thereafter. It is obvious that the difference of even a second in the application of the brake would have so reduced the speed as to have avoided a collision with any part of the wagon.

In view of the testimony of the fireman that Coffey was constantly under his observation except for a second or two, when his view was obstructed by cars, from a point where he was one hundred feet from the track until the time of the collision, I do not see how it can fairly be held that there was no sufficient support for a conclusion by the jury that at the time the danger blasts were commenced the fireman had actual knowledge of facts from which he should have concluded, as a reasonable man, that Coffey was already, owing to his ignorance of the approach of the train, in a position of danger; that even if his advancing horses' heads were not even then within the space that would be covered by the overhang of the locomotive as it passed, they would inevitably be within such reach in a second or two at most; that the situation was such that Coffey, for some reason, had been without knowledge of the approach of the train, and that the time was so short that he could not be brought

to a realization of his dangerous position in time to enable him to stop his team clear of all danger; and that the only hope of avoiding injury lay, not only in endeavoring to attract his attention by the danger blasts, but also in reducing the speed of the train as much as possible. If this be so, the question was one for the jury. Of course, Coffey could be in a position of great peril although his horses' heads were not as yet actually within three or four feet of the northerly rail. (See *Harrington* v. *Los Angeles etc. Co.,* 140 Cal. 520, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15].) If he was actually in such a position, and that fact was apparent to the fireman, and the fireman, nevertheless, failed to use what under the circumstances would be ordinary care to avoid the threatened injury, and the exercise of such care would have avoided the injury, all of which the jury had the right to conclude from the evidence, the failure to use such care must be held to be the sole cause of the injury, notwithstanding the previous negligence of Coffey. Such previous negligence ceased to be a factor in the eyes of the law as soon as Coffey was to the knowledge of the fireman actually in a position of peril, and he failed to use ordinary care to avoid the accident. I have in mind the well-settled rule that ordinarily the circumstances are such that one operating a train has the right to assume that one walking or riding toward a railroad track is able to and will care for himself by taking all necessary precautions to observe the approach of the train and that he will not place himself on the track at such a time as to be injured thereby. (See *Green* v. *Los Angeles etc. Ry. Co.,* 143 Cal. 44, [101 Am. St. Rep. 68, 76 Pac. 719] ; *Lambert* v. *Southern Pacific R. R. Co.,* 146 Cal. 236, [79 Pac. 873].) But, of course, there is no room for any such assumption where the circumstances are such as to show that the person approaching is *already* in such proximity to the track as to reasonably raise the question whether he will be able to get out of the way of the train. (See *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 520, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15] ; *Everett* v. *Los Angeles etc. Ry. Co.,* 115 Cal. 125, [34 L. R. A. 350, 43 Pac. 207, 46 Pac. 889].)

I am therefore of the opinion that in view of the last clear chance doctrine, as was held by the learned district court of

appeal, the verdict against defendant Railroad Company has sufficient support in the evidence.

Lorigan, J., and Lawlor, J., concurred.

Rehearing denied.