KIRTLEY et al. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court, W. D. Missouri, W. D. January 21, 1895.)

No. 1,978.

ACCIDENT ON RAILROAD TRACK—MUTUAL NEGLIGENCE.

Recovery cannot be had of a railroad for the death of a person killed while walking on its tracks, notwithstanding persons were in the habit of walking there, where the persons in charge of the engine did not discover him in time to prevent the accident, though, by the use of ordinary care, they might have done so, deceased having been in full possession of his faculties, and negligent in not observing the engine.

Action by Lulu Kirtley and others against the Chicago, Milwaukee & St. Paul Railway Company.

Plaintiffs sue for the death of their father. He was killed while walking on one of the defendant's double tracks within the city of Kansas, by a single engine, moving with the tender forward. The accident occurred on a fair day, between 9 and 10 o'clock in the morning, at a place where the deceased had an unobstructed view, both before and behind him, of more than a thousand feet along the track. He was walking westward, and on the north one of the two tracks. The north track was used by trains going westward, and the other by those moving in an opposite direction. The deceased had been traversing the south track, until, a few feet before he was struck, he discovered the train approaching him, and he turned from off that, and moved towards the north track. Whether he got upon it further than the south rail does not distinctly and decisively appear. Just at this time alarm whistles were given by the engine (which was approaching him from the rear, and by which he was struck) a few feet distant from him, which he did not seem to heed, and hence was immediately struck and killed. There is no evidence that the engineer actually saw the deceased until the alarm whistles were given, when it was then too late to avert the accident. The tracks at the point of the accident were on an elevated embankment, and were not intersected by any streets which crossed them at the level. There was testimony tending to show that it was somewhat the common practice for pedestrians to occupy these tracks in going from one point to another in the city. The jury were directed to find a verdict for the defendant, whereupon the plaintiffs took a nonsuit, and now move to set it aside.

Ed. G. Taylor, for plaintiffs.

Pratt, Ferry & Hagerman, for defendant.

PRIEST, District Judge (after stating the facts). This case, in its every essential feature, so closely resembles that of Railway Co. v. Moseley, 6 C. C. A. 641, 57 Fed. 921, that it is quite sufficient, for the justification of the action of the court in giving the peremptory direction to the jury, to refer alone to that case; but counsel contend that there is a charge in the petition here which was not made in the one in that case, and an element present here not noticed there. We think counsel in this is mistaken. The facts upon which counsel seek to distinguish this case from that were present there as conspicuously as here, but, because they were not so prominent and decisive of the case as those dwelt upon by the court, they appear not to have been directly commented upon. In addition to this, the charge of the trial court in that case obviated the necessity of reviewing those theories which are now called to my attention as distinguishing that case from this. In that case there was a contention that the plaintiff ought to recover because the defendant's servants saw him, and might, by the exercise of ordinary care, have averted his injuries; and also that, by the exercise of ordinary care, they would have discovered him in time to have avoided injuring him. Upon these two issues the trial court charged as follows:

"But there can be no recovery in this case on the ground that the engineer and fireman saw him, and might have avoided injuring him for this reason. There is no evidence in the case tending to show that either the engineer or fireman saw him before he was struck. That being so, the plaintiff is not entitled to recover upon the ground which I last stated. The plaintiff's attorney contends that under other circumstances the plaintiff would be entitled to recover, and he further contends that such circumstances exist in this case, and can be proven; that is to say, the plaintiff's attorney contends that the engineer and fireman, although they did not see him, by exercising

such reasonable care as they were bound to exercise might have discovered the plaintiff on the track, and the danger he was in, in time to have avoided injuring him. He further contends that they did not exercise such care, and on that ground he asks a verdict at your hands. The court is of the opinion, and the court so instructs you, that there can be no recovery on the ground last stated; that is to say, there can be no recovery on the ground that the engineer and fireman were at fault in not discovering the plaintiff on the track; and the court is of that opinion for the following reasons: It is true that it was the duty of the engineer and fireman to exercise ordinary care in looking out for persons and objects who might be ahead of them on the track, but it was also the duty of the plaintiff to exercise care to see that he was not overtaken by the trains or engines approaching him from the front or rear. The obligation resting on the engineer and fireman to look out ahead was no greater than the obligation resting on the plaintiff to keep a careful lookout to the rear. If the engineer and fireman in this case were at fault, in the mere matter of watching the track, the plaintiff was equally at fault in the same respect; and you are aware when two persons are equally at fault, and one of them is hurt, he cannot recover of the other. For that reason, I say to you, gentlemen, that you cannot render a verdict for the plaintiff in this case on the ground that the engineer and fireman were guilty of neglect in not discovering him on the track before he was struck. Conceding that they were guilty of neglect in that regard, plaintiff himself was guilty of the same species of neglect in not discovering the engine. Both were at fault, and, under these circumstances, he is not entitled to recover on account of the particular neglect last mentioned."

It is true this theory concerning the want of exercise of care after discovering the peril of one upon the track, or the failure to exercise ordinary care in discovering the peril of one on the track, —the theory now put forward with earnestness in this case,—was not descanted upon at length in that. We will give our understanding of the principles which form the component elements of that rule of law which permits a recovery by the plaintiff, although he may be in a condition of negligence, if by the exercise of ordinary care the defendant could have avoided injury to him after discovering his peril. Such a rule has its origin in the opinion of the court in the case of Davies v. Mann, 10 Mees. & W. 546, where it is said:

"This subject was fully considered by this court in the case of Bridge v. Railway Co. [3 Mees. & W. 246], where, as appears to me, the correct rule is laid down concerning negligence, namely: That the negligence which is to preclude a plaintiff from recovering in an action of this nature must be such as that he could, by ordinary care, have avoided the consequences of the defendant's negligence. I am reported to have said in that case, and I believe quite correctly, that the rule of law is laid down with perfect correctness in the case of Butterfield v. Forrester [11 East, 60], that although there may have been negligence on the part of the plaintiff, yet unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, he is entitled to recover; if by ordinary care he might have avoided, he is the author of his own wrong."

This case has been much misunderstood and maligned, and its principles put to very unjust uses and applications. Analysis of it will demonstrate the perfect soundness of its reasoning, and the validity of the principle there laid down. Every principle must be tested by the particular facts in relation to which it is announced. The facts in this case, briefly stated, are these: The plaintiff turned his ass out on the highway, fettered, to graze, and abandoned him. The defendant's servant, coming along with a wagon and team, care-

lessly ran over the animal, for the injuries in consequence of which the plaintiff brought action. Of course, it could not be predicated of the animal that it was guilty of negligence, and its owner was not present; so that, notwithstanding it was the duty of the owner not only to keep the animal from doing harm, but out of harm's way, he had not the opportunity of knowing that it was exposed to danger through the negligence of defendant's servant. On the other hand, it was not only the duty of the defendant's servant to keep a lookout to avoid harming anything which might be upon the public highway, but he had also, what the plaintiff had not, the present opportunity to know that the plaintiff's animal was exposed to danger through his careless driving. So that, when the rule in Butterfield v. Forrester was invoked, the court, in effect, said:

We admit the rule in that case to be perfectly accurate, but it is not applicable to the conditions in this; for in this case, while the duty to watch out was alike incumbent upon the plaintiff and the defendant's servant, yet the servant had in the discharge of that duty imposed upon him an opportunity to know of the animal's danger, and with that knowledge the power to avoid the injury, while the plaintiff had not; and therefore the plaintiff's neglect was not a present co-operating cause of the injury, but merely an attendant condition. If the plaintiff had been present in charge of the animal, with an opportunity to know of the danger to which it was or might be exposed through the negligence of the defendant's servant, and with that knowledge. or such as he would have gained by giving attention to the duty incumbent upon him by reason of the circumstances surrounding him, could have avoided the effect of the defendant's servant's negligence, it would have been perfectly proper and just to have applied the rule of Butterfield v. Forrester. The rule deducible from the case of Davies v. Mann is that where both parties are under obligation to anticipate, and have contemporaneous opportunities to know of, a danger which may be impending, and, with the knowledge which would come from the performance of the duty and the observance of the opportunity, have the capacity to avoid the danger, and both fail to discharge the duty or employ the opportunity. and one or both be injured in consequence, neither can recover of the other.

No well-considered case has fallen under my observation which cannot, by close and analytical study, be made to fall within the rule which we have just stated. This principle has been invoked in cases wherein there was not a mutual or like duty of vigilance, as in the cases of Huelsenkamp v. Railway Co., 37 Mo. 537; Walsh v. Transportation Co., 52 Mo. 434; or in those cases where like duties rested upon the party injured and the party charged with liability, and like opportunities to know of the danger in which the injured party was, but with a want of capacity on the part of the injured person (which was imparted to the tort feasor at the time) to avoid injury. This latter principle may be illustrated by supposing one, lawfully upon a railway track, suddenly prostrated, in the full possession of his senses, yet powerless to extricate himself from an approaching train, in which condition he is negligently run onto and killed. In such a case both parties were alike neglectful of their duties to watch. Both had contemporaneous opportunities to know of the danger of the one prostrate upon the track, but the driver of the engine could, by regarding the duty and opportunity, have stopped the engine before striking him; the prostrate individual, through no fault of his, could not have avoided the injury. Unless the rule is applied with

a view to these discriminating and distinguishing characteristics, it results in folly and injustice. It is ridiculous as reasoning, and accidental in application. It is nothing more than a declaration that, although both parties have contributed equally by their fault to the injury, the one who has suffered damage is to be exonerated, and the other punished, for the product of their mutual fault. No clearer statement of this principle can be made than that which is contained in the following expression in the case of O'Brien v. McGlinchey, 68 Me. 552, where it is said:

> "This rule applies usually in cases when the plaintiff or his property is in some position of danger from a threatened contact with some agency under control of the defendant, when the plaintiff cannot, and the defendant can, prevent the injury."

This, then, suggests an inquiry as to when a perilous situation exists, so as to call into application the principle which we have been discussing. This is not a question of fact purely, but, like the question of negligence itself, is a mixed question of law and fact, or, upon undisputed facts, is purely a question for the court. The very moment a person starts in the direction of a railway track, with the purpose to cross it, he is confronted with perils, unless he uses a proper degree of care to avoid trains which may be passing; but if he looks and listens, as a prudent man should, he is in no greater danger than if he were elsewhere. So a man upon a railway track is in no more danger from an engine approaching him 100 feet away, if by looking or listening he could see or hear it, and, seeing or hearing it, get out of its way, than if the engine was a mile away. From this we infer that so long as a person can, by the proper exercise of care, avoid a danger which might otherwise be impending, he is not in that dangerous situation contemplated by the rule which we are discussing, and which calls for active efforts of prevention on the part of trainmen.

From this discussion of the law it is easy to make application to the facts in this case. The deceased was in a situation which imposed upon him, for his personal safety, a duty of constant vigilance. Upon the other hand, the defendant's servants had no reason to anticipate that trespassers would be upon the defendant's track, and hence was under no duty to look out for them. The deceased had an opportunity, by the exercise of vigilance, of seeing and knowing of the approach of the engine by which he was struck. The defendant's servants might also have seen him if they had been on the lookout for him. The deceased having regard for his duty, and availing himself of the opportunity to know of the approach of the engine, had the ability, by a single step, to have gotten out of the way of the engine. If the defendant's servants had seen the deceased, they might also have stopped the engine, and have avoided injury to the deceased. Thus, it will be seen, of the three elements which go to make up a completed transaction in the relation of direct causing agencies, all of them were present and operating on the side of the deceased, whereas only two lay on the side of the defendant's servants; and in cases of that character the principle here invoked

and insisted upon has no sort of application. Conceding that there was a duty upon the defendant's servants to anticipate that persons would be upon the track, this is set off by the duty on the part of the deceased to anticipate that trains would run on the track, and hence to keep a lookout for them. Conceding that a careful lookout on the part of the defendant's servants would have revealed the deceased on the track, this is set off by the fact that a diligent outlook by the deceased would have revealed the approach of the engine at his rear. Conceding that the defendant's servants might have stopped the engine by the exercise of ordinary care before running onto the deceased, this concession is set off by the indisputable fact that the deceased after he might have discovered the engine, and even at a later stage in the events which led up to the catastrophe, might have stepped aside and have avoided the engine. In addition to this, there is no evidence that the deceased was in a position of peril a sufficient length of time to enable those in charge of the engine to realize his peril, or do more to protect him from injury than was done. The evidence disclosed the fact that, so soon as the deceased was discovered in danger from the engine by those in charge of it, alarms were given, and there is no proof that they could have done more than they did to avert the sad accident. The evidence shows that the engineer did make an effort to notify the deceased of his danger, while it shows no response to this admonition on the part of the deceased. This, at least, manifests a willingness upon the part of the engineer to do all in his power to save the deceased from harm; and we cannot justly presume, in the face of such actual efforts, that the engineer would have relaxed any efforts that under the stress of circumstances might have occurred to an agitated mind to avert the accident. We are not to judge of the care exercised under circumstances of this kind, by a deliberate retrospect of the facts, because we can never place ourselves, by a calm analysis of the features of these occurrences, in precisely the same frame of agitation as those who are actors in such events. If the engineer did all that reasonably occurred to him to do, confronted, as he was, by a pressing emergency, we cannot censure him because, after deliberate reflection over the events, we can point out something else which he might have done to have averted the calamity. The extremity of the situation was not of the engineer's making. It was created by the deliberately unlawful act of the deceased, and it would be unjust to charge the engineer and defendant with fault because his mind did not operate with the same deliberation which we have a right to expect if he were confronting an anticipated occasion usually within the line of his experience. If the deceased had manifested one-half the effort for his own protection that the engineer displayed, his life might have been saved. His wrongful act created the duty and necessity for the exercise of care upon the part of the engineer, and for his, and not the railway company's, interest, and thereby, so to speak, he made the engineer his agent for his safety; and hence he, and not the railway company, should suffer should the engineer be at fault under the cir-

cumstances. Nothing short of an injury willfully or wantonly inflicted, under such circumstances, should visit a liability upon a defendant. We have thus seen that the principle contended for by the plaintiffs' counsel, that a recovery might be had notwithstanding the contributory negligence of the deceased, is without justification in principle, so far as its application to the facts of this case is concerned.

We now turn to the questions of the deceased's contributory negligence, and a brief survey of the circumstances will be helpful in the solution of this inquiry. It must be borne in mind that whatever care is imposed upon the defendant is in consequence of the wrongful conduct of the deceased in going upon the railroad tracks, and using them for common highway purposes. He was a trespasser, invading the rights of the defendant, and violating a positive statutory law, while the defendant was enjoying the use of its property in that manner to which it was dedicated, violating no law and doing no wrong. The deceased was in full possession of all his faculties, and knew from experience and daily observation that many trains were continually passing to and fro over the track, and might have seen and heard the one by which he was struck, and by a single step have gone completely out of its way. We have, then, a case, in brief, of a person trespassing upon another in a place beset with dangers, abandoning all care and effort for his own safety, and demanding of those whom he was wronging to anticipate his unlawful conduct, and exercise for his protection more caution and greater care than he was willing to employ. This demand cannot be supported by law. Moore v. Railway Co., 24 N. J. Law, 268; Manly v. Railway Co., 74 N. C. 658; Railroad Co. v. Kean (Md.) 5 Atl. 325; Tuff v. Warman, 5 C. B. (N. S.) 585; Frazer v. Railroad Co. (Ala.) 1 South. 85. Contributory negligence, in its practical form, is the failure of plaintiff to exercise that degree of care which is incumbent upon him by reason of his circumstances and surroundings, and which would enable him to avoid the effect of the defendant's negligence. As evidence tending to establish a liability, some proof was offered tending to show that it was customary for footmen to travel along the track at the point where the deceased was struck. Conceding, for the present, that the frequency of persons upon the tracks would call for the employment of greater care in the operation of the defendant's trains than under other circumstances, and created a duty to anticipate their presence there, yet the degree of care to be exacted of the traveler is not diminished in the proportion that the degree of care of the railroad operatives is increased. The care of the respective persons is increased in equal ratio as the proportion of possible dangers of accident is increased. It is a rule of common sense that persons ordinarily prudent will exercise watchfulness to avoid danger in proportion as the sources of peril by which they are surrounded are few or great, or are capable of slight or more serious injury. If the instruments from which danger may be apprehended would be capable of inflicting only slight injury, a less degree of care on the part of the person exposed would

be exacted than if the instruments were capable of inflicting distressing, and perhaps fatal, injuries. As was well said by the supreme court of Missouri in Harlan v. Railway Co., 65 Mo. 24:

"The increased care exacted of the company on the one hand, and of the public on the other, is equal, and leaves the question of liability of the company to an adult person of sound mind, in the enjoyment of the senses of sight and hearing, dependent upon the rule applicable if the accident had occurred at any point on the road."

It follows from this, conceding that the defendant's servants are bound to exercise care because they might reasonably anticipate the presence of persons on the track, that this did not absolve to the slightest extent the deceased from the exercise of ordinary vigilance, having regard to the perils of his surroundings, for his own safety. He was the person who was in danger. It would be unusual that an injury should befall those in charge of the engine, or the engine itself, from a collision with an individual, but very natural that in such collision the individual should sustain serious, and perhaps fatal, injuries. The deceased, therefore, had the greatest inducement and greater reason to be alert and watchful, and this duty should never abate while a person is upon a railroad track. The books abound with authorities to the effect that one approaching a railroad track is bound to exercise his faculties in order that he may discover, and discovering avoid, collisions with trains that may be passing. Is it reasonable to exact this degree of care before one comes into a position of actual peril, and then relieve him when in a position of actual peril? The deceased, in going upon the track without the use of his senses of sight and hearing, was in a situation of peril continuously, and each moment that he lingered brought him nearer and closer in the presence of immediate danger. His duty was one of constant and unremitting vigilance so long as he remained upon the track. It continued down to the very instant of the collision, as a prominent factor to its accomplishment. The latest hope of rescue was within the power, and the exclusive power, of the deceased, had he exercised proper care; for he could, in an instant, having discovered the near approach of the train, have stepped out of its way, when it would have been too late possibly to have stopped the engine. So that, in point of time, his neglect is more proximate to the harmful act than that—conceding there was some—of the defendant's servants. The views which we have herein expressed are amply supported by one of the latest decisions of the supreme court of the United States. Elliott v. Railway Co., 14 Sup. Ct. 85. The motion to set aside nonsuit will be overruled.