CHRISTOPHER WINTER, PLAINTIFF IN ERROR, v. THE NEW YORK AND LONG BRANCH RAILROAD COMPANY AND CENTRAL RAILROAD COMPANY, DEFENDANTS IN ERROR.

Submitted July 9, 1901—Decided November 15, 1901.

A man is negligent who attempts to drive across a railroad line, after listening and looking only once toward a quarter from which a train may approach, if those acts of attention and observation are performed when the observer is so far from the crossing that before he will reach it a train, coming from that quarter and open to his further attention and observation, has time to advance so as to endanger him.

On error to the Monmouth Circuit Court.

For the plaintiff in error, *Michael J. Tansey.*

For the New York and Long Branch Railroad Company, *Applegate & Hope.*

For the Central Railroad Company of New Jersey, *John L. Conover.*

The opinion of the court was delivered by

ADAMS, J. The plaintiff sued to recover damages for injury received by collision with a railroad train, and was nonsuited on the ground that his own negligence was a cause of his injury. The correctness of this ruling is now to be examined.

The plaintiff is a milkman. Upon December 1st, 1899, half an hour before sunrise on a foggy morning, he set out from his house near Cliffwood, in Middlesex county, in a one-horse wagon, on his daily route. The plaintiff's position in his wagon was not favorable for seeing and hearing. The wagon had a cover and a hood in front, with a dashboard, and a sliding door on either side, with a glass window in the upper part of the door panel. Thus enclosed, the plaintiff sat in a seat at the rear of the wagon, with two milk cans in front of him.

After leaving his house he drove westerly along a road running about east and west that crossed, at right angles, a double-track railroad of the defendants. The plaintiff was familiar with the locality, and knew that there were no gates at the crossing, and that no flagman was stationed there. When distant about three hundred and sixty-eight feet from the crossing he opened the door on the right-hand side of the wagon and looked toward the north, across a field, for a southbound train. He did this, not because he had a definite expectation of seeing a train, but by way of general precaution. Indeed, he testified affirmatively that he did not expect to see a southbound train, for he had heard a whistle before he left his house, from which he inferred that the early morning train from Jersey City had passed. Nevertheless, he very properly looked toward the north. Seeing and hearing nothing, he was confirmed in his inference that the southbound train had already gone by, and, reposing on that assurance, opened the door on the south side of the wagon, and thenceforward gave his undivided attention to that quarter where obstructions to sight made observation difficult. So, not looking again toward the north, he drove on until he reached the crossing, when he suddenly lost consciousness, and knew nothing more until he came to himself in his own house. What had happened was that the southbound train, coming along about three-quarters of an hour late, had struck his wagon.

The plaintiff testified that when he looked to the north, if there had been a train "at the point of the woods," he could have seen it, or that he could have seen the lights. The place referred to as "the point of the woods" was distant northerly about seven hundred and fifty-six feet from the crossing. Between the place where the plaintiff was when he looked to the north and the crossing there were no obstructions that would have seriously interfered with his view of a southbound train. In the immediate vicinity of the crossing the facilities for observation were such that a southbound train would have been visible in clear light for many hundred feet. It was somewhat dark and foggy, and this state of the atmosphere restricted vision, and, at the same time, called for extra cau-

tion. Upon these facts the trial judge nonsuited the plaintiff. The question is whether this judgment was erroneous.

The obligation that rested on the plaintiff was to be prudent. This was a duty co-extensive with the continuance of the situation that called for caution. The rule that requires prudence is to be reasonably understood. One need not be vigilant at extravagantly long range. This would be futile, and precaution might exhaust itself before peril came. Nor does the law expect incessant observation, or exact the performance of the impossible feat of looking both ways at once. But it is plain that care, in order to be effective, must cover the whole field of danger. If risk is inherent in a continuing state of things, the duty to exercise reasonable care is, to the same extent, a continuing obligation. This, at least, must be true: that a man is negligent who attempts to drive across a railroad line after listening and looking only once toward a quarter from which a train may approach, if those acts of attention and observation are performed when the observer is so far from the crossing that before he will reach it a train, coming from that quarter and open to his further attention and observation, has time to advance so as to endanger him.

This conclusion is the dictate of good sense. It applies to the facts under examination, and is supported by authority. A recent case in this court is *Cantrell* v. *Erie Railroad Co.*, 35 *Vroom* 277. An earlier case in this court is *Pennsylvania Railroad Co.* v. *Leary*, 27 *Id.* 705. These opinions show that persons who cross railroad tracks, either on foot or in vehicles, are strictly held to the duty of careful observation and attention. In each of these cases the plaintiff was injured, notwithstanding some care on his part. In each case a judgment of nonsuit was sustained. In each case the defect in the plaintiff's cause of action was the same. That defect was that though he exercised care at first, he did not continue to be careful, but became inattentive to his surroundings before he reached a place of safety.

It may be added that, in Pennsylvania Railroad Co. *v.* Leary, the plaintiff's reason for taking only slight precaution was that he knew that there was no regular train at that hour.

This case has the same feature. It is not a valid excuse. The judgment of nonsuit is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.