[L. A. No. 1056.  In Bank.—April 13, 1904.]

## JOSEPH GREEN, Respondent, v. LOS ANGELES TERMINAL RAILWAY COMPANY, Appellant.

ACTION FOR DEATH—NEGLIGENCE OF RAILROAD COMPANY—CONTRIBUTORY NEGLIGENCE OF DECEASED—FAILURE TO LOOK AND LISTEN.—In an action for the death of plaintiff's wife, in which, notwithstanding proof of the negligence of the defendant, a steam-railroad company, in running its train in a city at a rate between twenty-five and thirty miles an hour, and in failing to give the customary signals, it appeared from the evidence that the deceased, while in full possession of her faculties, advanced slowly from a distance of thirty feet from the track, where no train was seen, along a path which led at an angle of thirty degrees across the track, and stepped upon the track with her face turned partly away from the approaching train, which was plainly visible at a distance of eight hundred feet, and which she would have seen and escaped injury if she had looked and listened, her failure to do so was contributory negligence as matter of law, which precluded a recovery.

ID.—WANTON NEGLIGENCE OF DEFENDANT—CONCURRENT ACTS.—The rule that, notwithstanding the contributory negligence of the plaintiff, the defendant is still responsible if he was guilty of wanton negligence, when he might with reasonable care have avoided the injury after discovery of the plaintiff's danger, has no application where both parties are equally guilty of concurrent acts of negligence, each of which at the very time when the accident occurred contributed to it.

ID.—RIGHTS AND DUTY OF ENGINEER—PRESUMPTIONS.—The engineer had the right to presume that a person seen in a place of safety

was in possession of natural faculties, and would not recklessly move directly in front of the approaching train, and was not required to stop or check the train to ascertain whether such person was about to do so; and the engineer did his whole duty in giving the alarm and trying to stop the train as soon as the person was seen to step upon the track, though such effort was unavailing.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Gibbon, Thomas & Halstead, A. S. Halstead, and Goodrich & McCutchen, for Appellant.

The contributory negligence of Bessie Green was a direct and proximate cause of her death; and precluded recovery, as matter of law. (*Dufour* v. *Central Pacific R. R. Co.,* 67 Cal. 319; *Long* v. *Coronado R. R. Co.,* 96 Cal. 269; *Jamison* v. *San Jose etc. R. R. Co.,* 55 Cal. 593; *Flemming* v. *Western Pacific R. R. Co.,* 49 Cal. 253; *Trousclair* v. *Pacific Coast S. S. Co.,* 80 Cal. 521; *Hager* v. *Southern Pacific Co.,* 98 Cal. 309; *Holmes* v. *Southern Pacific Co.,* 97 Cal. 161; *Pepper* v. *South Pacific C. Ry. Co.,* 105 Cal. 397; *Glascock* v. *Central Pacific R. R. Co.,* 73 Cal. 137; *Clark* v. *Bennett,* 123 Cal. 278; *Herbert* v. *Southern Pacific Co.,* 121 Cal. 230; *Bailey* v. *Market-Street C. Ry. Co.,* 110 Cal. 328; *Kenna* v. *Central Pac. R. R. Co.,* 101 Cal. 29; *Niosi* v. *Empire Steam Laundry,* 117 Cal. 257; *Everett* v. *Los Angeles etc. Ry. Co.,* 115 Cal. 105; *Green* v. *Southern California Ry. Co.,* 138 Cal. 1; Beach on Contributory Negligence, sec. 452; *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Chicago etc. Ry. Co.,* 114 U. S. 615; *Elliott* v. *Chicago etc. Ry. Co.,* 150 U. S. 245; *Blount* v. *Grand Trunk Ry. Co.,* 61 Fed. 375; *Central of Georgia Ry. Co.* v. *Forshee,* 125 Ala. 199; *Sala* v. *Chicago etc. Ry. Co.,* 85 Ill. 678; *Maryland Central Ry. Co.* v. *Neubeur,* 62 Md. 399; *Hudson* v. *Erie R. R. Co.,* 70 N. Y. Supp. 350, 353; *Carrington* v. *Louisville etc. Ry Co.,* 88 Ala. 472; *Neal* v. *Gillette,* 23 Conn. 437.) The doctrine of "last clear chance" has no application to this case, where the negligence of both parties was concurrent at the time of the accident. (Thompson on Negligence, sec. 176; *Holmes* v. *South Pacific Coast Ry.*

Co., 97 Cal. 161, 167; Sego v. Southern Pacific Co., 137 Cal.
105; Everett v. Los Angeles Ry. Co., 115 Cal. 127, 128;
O'Brien v. McGlinchy, 68 Me. 55; Smith v. Norfolk and S. R.
Co., 114 N. C. 728; Kirtley v. Chicago etc. Ry. Co., 65 Fed.
386, 389, 391; Guyer v. Missouri Pacific Ry. Co., 174 Mo. 344;
Watson v. Mound City Street Ry. Co., 133 Mo. 250; Murphy
v. Dean, 101 Mass. 455;[1] Rider v. Syracuse Rap. Trans. Co.,
171 N. Y. 139.)    There was no wanton negligence of the en-
gineer, who had the right to assume that the foot-passenger
would not be reckless and step in front of the train.    (Beach
on Contributory Negligence, sec. 394; Green v. Southern
Pacific Co., 122 Cal. 563; Holmes v. South Pacific Coast Ry.
Co., 97 Cal. 161; Everett v. Los Angeles Ry. Co., 115 Cal. 119;
Cleveland etc. Ry. Co. v. Miller, 149 Ind. 490; Gahagan v.
Boston etc. R. R. Co., 70 N. H. 441; Guyer v. Missouri Pacific
Ry. Co., 174 Mo. 344; Frazer v. South etc. R. R. Co., 81 Ala.
185;[2] Maryland Central Ry. Co. v. Neubeur, 62 Md. 391, 399;
Telfer v. N. R. R. Co., 30 N. J. L. 188; Lake Shore v. Miller,
25 Mich. 379; Boyd v. Wabash Western Ry. Co., 105 Mo. 371;
McNab v. United Ry. etc. Co., 94 Md. 719; Jackson v. Kansas
City etc. Ry. Co., 157 Mo. 621.[3])

R. A. Ling, and E. A. Meserve, for Respondent.

The engineer did not use due care to avoid the injury,
having the power to do so, as he testified; and on the whole
facts, the questions of negligence and of contributory negli-
gence were questions for the jury.    (Judson v. Central Ver-
mont R. R. Co., 158 N. Y. 597; Driscoll v. Cable Ry. Co.,
97 Cal. 553, 567;[4] Clark v. Bennett, 123 Cal. 278; Fox v.
Oakland Cons. St. Ry. Co., 118 Cal. 55;[5] Link v. Philadelphia
R. R. Co., 165 Pa. St. 75; Esrey v. Southern Pacific Co.,
103 Cal. 541; Cunningham v. Los Angeles R. R. Co., 115
Cal. 561; Hecker v. Oregon Ry. Co., 40 Or. 6; Southern Pa-
cific Co. v. Hereda, 109 Fed. 379-381.)    The foot-passenger
had the right to rely on the customary signals of danger.
(Defrieze v. Illinois Central R. R. Co., (Iowa) 94 N. W. 505;
Gugenheim v. Lake Shore etc. Co., 66 Mich. 150; Woehrle
v. Minnesota T. R. Co., 82 Minn. 165; Pennsylvania Ry. Co.

---

[1] 3 Am. Rep. 390.                    [4] 33 Am. St. Rep. 203.
[2] 60 Am. Rep. 145.                   [5] 62 Am. St. Rep. 216.
[3] 80 Am. St. Rep. 650.

v. *Ogier,* 35 Pa. St. 71;[1] *Smith* v. *Boston etc. R. R. Co.,* 70 N. H. 53;[2] *Orcott* v. *Pacific Coast Ry. Co.,* 85 Cal. 291.)

LORIGAN, J.—This action is brought by plaintiff to recover damages for the death of his wife, alleged to have been occasioned through the negligent operation of a locomotive and train of cars by the employees of defendant, within the corporate limits of the city of Los Angeles.

The case was tried by the court without a jury, and judgment rendered in favor of plaintiff for five thousand dollars.

This appeal is from the judgment and from an order denying defendant's motion for a new trial.

These were both subsequently affirmed by this court in Bank, but, a rehearing having been granted, the matter is now again before us for disposition.

In our judgment, the sole point involved is whether the plaintiff's intestate was guilty of such contributory negligence as precludes a recovery by plaintiff, and we think that this point is fully presented, and is to be disposed of, under the findings of the lower court made in the case.

This matter was very fully discussed in the former opinion of this court above referred to, in considering the general finding of the lower court, that plaintiff's wife had used ordinary care and prudence, and had not been guilty of carelessness or negligence contributory to the accident in which she lost her life.

We are entirely satisfied with the views there expressed upon the doctrine of contributory negligence as applied to the general finding, and readopt them.

In this respect that opinion declared:—

"The evidence, though sharply conflicting, is sufficient to support the findings of the superior court, that the train, considering the locality, was moving, at the time of the accident, at an excessively high and dangerous rate of speed (between twenty-five and thirty miles an hour), upon a descending grade, without steam, making but little noise, and without giving any of the statutory and customary signals, by sounding its whistle, or ringing its bell. But neither the evidence nor the specific findings of the court sustain the more general finding to the effect that plaintiff's wife in ap-

---

[1] 78 Am. Dec. 322.    [2] 85 Am. St. Rep. 594.

proaching the track of defendant, at the place where she was killed, used ordinary care, and did that which an ordinary prudent person would have done under the circumstances, and did not by her own carelessness, or negligence, in any wise contribute to said accident or injury. The deceased was a woman of mature age, in good health, and in full possession of all her faculties. She approached the track of defendant on foot and by daylight, at a point from which it was plainly visible to a distance of eight hundred feet to the eastward, beyond which it made a curve to the north. When thirty feet distant from the track she was seen to look towards the east and then immediately advance along a path which crossed the track at an angle of thirty degrees. As the track extended nearly east and west, and her course was from southeast to northwest, this caused her face to be turned partly away from the train, which was approaching from the east. It is to be inferred that when she looked towards the east from the point thirty feet distant from the track, the train had not rounded the curve and was out of view, for she advanced slowly along the path, without again looking up, and when in the act of stepping on the track was struck by the locomotive and killed.

"Under these circumstances it is clear, in view of numerous decisions of this court, and of the great weight of authority elsewhere, that she cannot be acquitted of culpable negligence directly contributing to the fatal result. While it is true that negligence is ordinarily a question of fact, it is, in some cases, a conclusion of law. In the case of *Herbert* v. *Southern Pacific Co.*, 121 Cal. 230, Justice Temple, delivering the opinion of the court, after laying down the general rule, stated the exception as follows:—

" 'But cases arising from injuries suffered at railroad crossings have been so numerous, and upon certain points there has been such absolute accord, that what will constitute ordinary care in such a case has been precisely defined, and if any element is wanting, the courts will hold, as matter of law, that the plaintiff has been guilty of negligence. And when injury results which might have been avoided by the use of proper care, the plaintiff cannot recover, although the defendant has also been guilty of negligence. In this special case the amount of care, as well as the nature of it, has been

settled.' To illustrate this view he proceeds, as follows: 'The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and listen for approaching trains. What he must do in such a case must depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precaution.'

"The language here quoted, from one of our own decisions, is strictly applicable to the present case. If plaintiff's wife had taken the precaution to look, and had availed herself of every opportunity she had to look for the approaching train, she need not have been injured, and we are not obliged to resort to any presumption to establish her failure to take the required precaution, for the evidence and the findings show that after looking along the track toward the east once, when she was thirty feet distant therefrom, she did not look again, but, turning her face in an opposite direction, walked so slowly that the train, coming from a point beyond her view at the time she looked, could travel over eight hundred feet while she was covering the thirty feet between her point of observation and the nearest rail of the track. The only answer of the respondent to the claim that this was negligence *per se* is, that the precaution she took would have been entirely sufficient if the train had not been running at a reckless rate of speed, and that she had a right to assume that it would only move at a lawful and proper rate. But this argument also is answered by the Herbert case, where Judge Temple, commenting on a similar contention, says: 'The defense of contributory negligence implies that defendant may have been guilty of such negligence as would justify a recovery by plaintiff, if he were not also in default.' There is, in other words, no occasion for the application of the rule as to contributory negligence, except in cases where it is shown or assumed that the defendant has been guilty of actionable negligence. When such negligence is not shown, he is for that reason alone free from any liability, and only when it is shown has he any occasion to exonerate himself by proof of contributory negligence on the part of the plaintiff. It is no

excuse, therefore, for plaintiff's wife that the train was running faster than was proper at that point. There was no law or ordinance restricting its speed to any particular rate, and if, as the trial judge concluded, the speed was, under the circumstances, excessive, a reasonably careful person would have guarded himself from the consequences of such negligence by the easy and simple precaution of looking, when about to pass from a position of safety to a position of danger. A person on foot, in possession of all his faculties, and in complete control of his own movements, stepping on a railroad track immediately in front of a train which has been moving eight hundred feet at a speed of less than thirty miles an hour, in full view, is clearly guilty of negligence. Upon this point the case of *Holmes* v. *South Pacific Coast Ry. Co.,* 97 Cal. 167, is conclusive authority. There it was said: 'A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion, and who is possessed of ordinary intelligence, that it is not safe to walk upon it, or near enough to it, to be struck by a passing train without the exercise of constant vigilance, in order to be made aware of the approach of a locomotive, and thus be enabled to avoid receiving injury; and the failure of such person, so situated with reference to the railroad track, to exercise such care and watchfulness, and to make use of all his senses in order to avoid the danger incident to such a situation is negligence *per se.'* This statement of the doctrine of negligence *per se,* made ten years ago, was based upon several decisions of this and other courts, cited in the opinion of Justice De Haven, and the rule has been applied in a number of more recent cases decided here. (See *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227; *Bailey* v. *Market-Street Ry. Co.,* 110 Cal. 329; *Lee* v. *Market-Street Ry. Co.,* 135 Cal. 295; *Green* v. *Southern California Ry. Co.,* 138 Cal. 1; *Warren* v. *Southern California Ry. Co.,* 138 Cal. 1, and cases cited.)

"In other jurisdictions the same doctrine has been frequently applied in cases closely resembling the present. These decisions have been cited in the briefs of counsel, and it is unnecessary to repeat the citations here, but we will quote the language used by the judges in one or two instances in discussing a state of facts substantially the same as those which we have before us.

"Commenting upon a case in which the injured party had looked for an approaching train when some distance from the track and had then driven on without again looking, the supreme court of New Jersey says: 'If risk is inherent in a continuing state of things, the duty to exercise reasonable care is a continuing obligation. This at least must be true, that a man is negligent who attempts to drive across a railroad line after listening and looking only once toward a quarter from which a train may approach, if these acts of attention and observation are performed when the observer is so far from the crossing that before he will reach it a train coming from that quarter, and open to his further attention and observation, has time to advance so as to endanger him.' After citing several decisions to the same effect the court proceeds: 'These opinions show that persons who cross railroad tracks, either on foot or in vehicles, are strictly held to the duty of careful observation and attention. In each of these cases the plaintiff was injured notwithstanding some care on his part. In each case a judgment of nonsuit was sustained. In each case the defect in plaintiff's cause of action was the same. The defect was, that though he exercised care at first, he did not continue to be careful, but became inattentive to his surroundings before he reached a place of safety.' (*Winter* v. *New York etc. R. R. Co.*, 66 N. J. L. 677.)

"In *Central of Georgia Ry. Co.* v. *Forshee*, 125 Ala. 199, the supreme court of Alabama says: 'It is equally clear, on principle and authority, that this duty must be performed at such time and place, with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. He must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened, and his attempt to proceed across the track. If he stops so far from the railway as that a train, which could not be seen from that point, could and does reach the crossing by the time he has traversed the intervening distance and gotten on the track, he negligently contributes to the resulting collision and injury, and the same

is true if, though he stop at the track, he lingers there after looking and listening, and delays crossing until a train not in sight or hearing when he stopped, looked, and listened has come meantime upon the scene, and collides with him when he does attempt to cross.'

"The court of appeals of New York, speaking of the duty of a person about to cross a railroad track, says: 'To be sure, the statute requires a railroad company to give specified warnings, but it neither takes away a man's senses nor excuses him from using them. The danger may be there; the precaution is simple. To stop, to pause, is certainly safe. His time to do so is before he puts himself in the very road of casualty.' (*Wilds* v. *Hudson River R. R. Co.*, 24 N. Y. 430.)

"The supreme court of Minnesota says: 'We are unable to find in the record any excuse for the intestate's disregard of his obvious duty to himself, to use his eyesight at the time when he could easily have discovered the danger of collision, which was up to the very moment he stepped upon the main track. Until then he had full control of his movements. He could by the slightest move of his head towards the east have discovered his hazard, and by the slightest check of his movements have avoided the same.' (*Olson* v. *Northern Pacific R. R. Co.*, 84 Minn. 258.)

"In all of the cases from which the foregoing quotations have been made, and in many others cited in the briefs, the negligence charged against the defendant, and proved or assumed for the purpose of the decision, was excessive speed in the movement of trains, or omission of customary signals by sounding the whistle or ringing the bell,—the same character of negligence, that is to say, which plaintiff contends excused his wife from looking a second time for the approach of the train. They therefore sustain both propositions laid down by Justice Temple in the Herbert case, as stated above, and in the absence of more direct authority to be found in our own decisions would warrant us in holding, if the question were a new one, that a person who with his eyes open steps upon a railroad track immediately in front of a moving train, visible from a point eight hundred feet distant from the point of collision, is necessarily, and as matter of law, guilty of contributory negligence."

The foregoing from the former opinion, in our judgment, contains an accurate statement of the evidence, a clear consideration and discussion of the findings, and correctly announces and applies the doctrine of contributory negligence to the case at bar, from all of which it appears that, while the defendant was guilty of negligence, plaintiff's intestate was likewise guilty of such contributory negligence as precluded a recovery by plaintiff.

Under such circumstances the judgment and order must be reversed, unless there is some other feature of the case presented by the findings upon which they can be sustained.

It is contended by respondent that such a feature exists, and that it arises from a special finding of the court—No. 7— which is as follows: "As said train rounded said curve and came upon said Humboldt Street, going at a high and dangerous rate of speed, downhill, no bell on the engine thereof being rung, or other warning of its approach being given, the engineer in charge of the engine on said train saw said Bessie Green and knew that she was walking on said path, and crossing said Humboldt Street, ahead of said train, and that she gave no evidence of knowledge of the approach of the train. That, notwithstanding such facts, said engineer did not slacken or lessen the speed of said train, or attempt to give said Bessie Green warning of its approach. That as, and just after said train crossed said Avenue 23, going toward said Bessie Green, and at such high rate of speed, said engineer still saw said Bessie Green, and still saw and knew she was advancing upon said track, and that she still gave no evidence of knowledge of the approach of said train, but said engineer still did not lessen the speed of said train, or blow a whistle or ring a bell, or give other warning of the approach of said train, nor was any given until the train was within ten or fifteen feet of the point of the accident. That said engineer could have stopped said train at any time within two hundred feet after starting to do so. That when within ten or fifteen feet from the place of such accident the engineer blew the whistle, applied the air-brakes, and reversed the engine, and did all in his power with the appliances he had to stop the train, and the fireman rang the bell."

Respondent's contention is, that while the general rule may be, that one cannot recover where his neglect contributed

proximately and directly to the accident, yet this rule is subject to the exception that where a defendant, discovering that a party has placed himself in a place of danger or peril, refuses or fails to do some act within his power which would have prevented or avoided the accident, then the defendant will be liable, notwithstanding the neglect of the plaintiff may have contributed to the injury, and contends that this finding presents such a condition as calls for the application of the exception to the general rule in the case at bar.

There is no question but that this exception to the general rule exists, and is usually extended to that limited class of cases where the failure to avoid the injury after discovery of the danger to plaintiff amounts to gross neglect and approaches actual wantonness on the part of the defendant. The rule on this subject is tersely and clearly stated in Shearman and Redfield on Negligence (sec. 99) as follows: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by defendant's neglect, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury *was more immediately* caused by defendant's omission, *after becoming aware of plaintiff's danger,* to use ordinary care for the purpose of avoiding injury to him."

It applies in cases where the defendant, knowing of plaintiff's danger, and that it is obvious that he cannot extricate himself from it, fails to do something which it is in his power to do to avoid the injury. It has no application, however, to a case where both parties are guilty of concurrent acts of negligence, each of which, *at the very time when the accident occurs,* contributes to it.

This whole subject is fully discussed in *Holmes* v. *South Pacific Coast Ry. Co.,* 97 Cal. 169, where the plaintiff, walking up and down the defendant's track at a station while waiting for an approaching train, negligently remained on the track and was struck by the locomotive. In that case, discussing the liability of the defendant, notwithstanding the plaintiff's contributory negligence, this court quotes approvingly the language of the supreme court of Maine in *O'Brien* v. *McGlinchy,* 68 Me. 552, as follows: "But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act

of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant. This rule applies usually in cases where the plaintiff, or his property, is in some position of danger from a threatened contact with some agency under the control of defendant, when the plaintiff cannot, and the defendant can, prevent the injury. . . . But this principle cannot govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them." And, after quoting thus far from that decision, our court then proceeds: "This, we think, may be regarded as a correct statement of the law upon this point, and as furnishing a clear and definite rule by which to determine in any case whether or not the negligence of the person injured may be said, in a legal sense, to have contributed to such injury; and when we apply this rule to the case here, it is at once seen that, even if it should be conceded that there was negligence upon the part of the defendant in its management of the train at the time of and just preceding the accident, still the plaintiff would not be entitled to recover, as such accident could not have occurred without the concurrent and active negligence of the deceased at the time. The defendant was not the only one who could have prevented the accident, but, on the contrary, if the deceased had himself used ordinary care at the time, he could not possibly have been harmed by defendant's locomotive, which was confined to the narrow track upon which it ran. Up to the very moment that he was struck by the engine, it was within his power to escape the injury which he received by simply moving to a place of safety upon the sidewalk, and he would have realized the necessity for such action on his part but for his own negligence at the time in not looking or listening for the approach of the train."

The general rule and the exception are further fully discussed by Justice Angellotti in the recent case of *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514.[1]

In the case at bar. however, giving the respondent the full benefit of any favorable deduction which can be made from

[1] 98 Am. St. Rep. —.

the quoted finding, still it does not present any condition to which the exception to the general rule can apply.

All that this finding in effect declares is, that the defendant was guilty of negligence in failing to give the usual warnings and running its train at an excessive rate of speed; that the engineer saw Bessie Green approaching the track along a path which crossed it; that she gave no evidence of knowledge of the approach of the train; and that, notwithstanding such fact, the engineer did not slacken or lessen the speed of the train, or attempt to give said Bessie Green warning of his approach.

But during all this time, it will be observed, Bessie Green was in a position of absolute safety; she was not upon the defendant's track, but walking upon the pathway approaching it. There was nothing to indicate to the engineer that she would leave that place of safety and put herself in one of danger. The mere fact that she gave no evidence of a knowledge of the approach of the train while walking along the pathway towards the track did not indicate to the engineer that she was about to place herself in a position of peril. It is a matter of common observation that thousands of people daily cross in front of trains and approach crossings for that purpose, without giving any indication that they are aware of the coming of the train. They proceed, determining for themselves whether they have sufficient time to make the crossing safely or not, solicitous only for their personal safety, and giving no indication to the engineer whether they will hazard the risk of crossing, or pause until the train passes by, or in any manner indicating that they are aware of the approach of the train, or are concerned about it.

And as to this quoted finding there is nothing in it to indicate that, as far as the engineer knew or could have known, Bessie Green might not have been perfectly well aware of the approach of the train and still have given no indication or manifestation of that knowledge. The law cast upon her the duty of looking to see, when approaching the point of danger, whether there was a train in sight which might prevent her crossing the track in safety, and the engineer had a right to assume that she had taken the precaution which the law required to insure her own safety, was aware of the situa-

tion, and being in a place of safety would remain there and not pass to a point of danger.

And unless it can be said as a matter of law that it is the duty of an engineer to check his train when he sees one approaching a track and giving no indication of knowledge of the coming train, then this finding amounts simply to a finding that the engineer was negligent, which, of course, is conceded in the case.

This is not, however; the negligence which we are now discussing, and for which the defendant is claimed to be liable. Its liability is for negligence after the engineer had discovered that Bessie Green had placed herself in a position of actual danger.

During all the time that she was approaching along the pathway to the crossing she was in a position of absolute safety, and there is no rule of law which charged the engineer with knowledge that she was about to change her position of safety for one of peril. On the contrary, the engineer had a right to assume that she was in possession of her faculties and would retain her place of safety, and not recklessly expose herself to danger. To hold that the engineer, because she gave no indication of knowledge of the approach of the train, was bound to assume that she would heedlessly leave a place of safety, put herself upon the track, and endanger her life, would be to revise the rule which, as far as we are advised, is universal in all jurisdictions, and certainly is the rule in this state, that where an engineer sees a person approaching a track he has the right to presume that the person is in possession of his ordinary faculties, alert to the danger which may ensue from passing trains, that he will not attempt to cross in view of the train, and is therefore not required to check the speed of the train to enable him to cross in front of it, or to ascertain whether he is about to do so.

In *Green* v. *Southern Pacific Co.*, 122 Cal. 565, an action brought to recover damages for the death of the husband killed at a crossing, this court says: "Unless the defendant knew, or had reason to believe, that the deceased was from some cause not possessed of the ordinary ability to care for himself, it had the right to presume that he possessed such ability and would take the ordinary precautions to protect

himself from injury.'' (See, also, *Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 161.)

And the general rule upon this subject is clearly expressed in *Olson* v. *Northern Pacific R. R. Co.*, 84 Minn. 258, heretofore referred to. That was a case where the deceased was killed in attempting to cross a railroad track, and the court in its decision comments on the facts and declares the rule of law applicable to them. It says: ''We are unable to find in the record any excuse for intestate's disregard of his obvious duty to himself to use his eyesight at the time when he could easily have discovered the danger of collision, *which was up to the very moment he stepped upon the main track.*

''Until then he had full control of his movements. He could, *by the slightest movement of his head towards the east, have discovered his hazard, and by the slightest check of his movements have avoided the same.* Under such circumstances his obvious want of care must preclude a recovery in this case. . . . Plaintiff strenuously urges that, notwithstanding plaintiff's intestate may have been negligent, yet the servants in control of the engine of the freight-train could, with ordinary care, have discovered his danger, and their failure to ring the bell, or make some effort to avoid the accident, after they could have seen intestate, authorizes the submission of the case, notwithstanding such contributory negligence. We are unable to adopt this view. The reasonable presumption that due care will be exercised by all persons in mutual relation when care is required is not a partial or one-sided doctrine, but applies to each alike. It seems clear to us that while the intestate might have the right to say that all signals should be observed by the defendant's servants in the exercise of ordinary care by such, the latter would also have the right to indulge in the same presumption with reference to the conduct of the unfortunate man who was deprived of his life by his own negligence, and presume that he would do his duty likewise. The engineer could not be held to suppose absolutely, as a matter of law, that a young man of good intelligence, with average faculties, before going on a railway crossing, would keep his head turned away from the direction in which a train might be approaching, when the slightest glance of the eye, even at the last moment, would apprise him of the danger, or the checking of his movements, upon

the plainest dictates of common prudence, would have protected him from injury.''

In the case of *Gahagan* v. *Boston etc. R. R. Co.,* 70 N. H. 441, which was likewise an action for injuries received at a crossing, the court, discussing the reciprocal duties of pedestrians and railroad trains, uses the following language: ''In the present case there is evidence that when the plaintiff was first seen by the engineer the collision could have been prevented. If the engineer knew, or ought to have known, then that the plaintiff would be upon the crossing when the train reached it, and could have avoided the collision, his failure to do so is the proximate cause of the injury. As there was evidence that the collision might have been prevented by him, the sole remaining question is whether, upon the evidence, reasonable men might find the engineer ought then to have foreseen the plaintiff's negligence. The bare fact that the plaintiff was seen approaching the track is not sufficient to authorize such a finding. If it were, the rule heretofore laid down, and found to be approved by the authorities and the reason of the case, that it is the duty of the highway traveler to stop and allow the train to pass, would be reversed. It would then become the duty of the train to stop and wait for the person on foot to go by. This would be unreasonable, unpracticable, and put an end to the modern system of rapid transportation demanded by the public, and to effectuate which railroads are authorized by the state. The company's servant may ordinarily presume that a person apparently of full age and capacity, who is walking upon the track at some distance before the engine, will leave it in time to save himself from harm, or, if approaching the track, that he will stop if it becomes dangerous for him to cross it.'' To the like effect we assign a few other authorities: Beach on Contributory Negligence, sec. 394; *Cleveland etc. Ry. Co.* v. *Miller,* 149 Ind. 490; *Guyer* v. *Missouri Pacific Railway Co.,* 174 Mo. 344; *Kirtley* v. *Chicago etc. Ry. Co.,* 65 Fed. 386; *Boyd* v. *Wabash Western Ry. Co.,* 105 Mo. 371; *Smith* v. *Norfolk and S. R. Co.,* 114 N. C. 728; *McNab* v. *United Ry. etc. Co.,* 94 Md. 719; *Rider* v. *Syracuse Rap. Trans. Co.,* 171 N. Y. 139; *Jackson* v. *Kansas City etc. Ry. Co.,* 157 Mo. 621.[1]

As the authorities thus declare that the engineer had a right

---

[1] 80 Am. St. Rep. 650.

to assume (as the court in this case found the fact to be) that Bessie Green was in the full possession of her natural faculties, and to further assume that as she was in a place of safety on the path she would not expose herself to the danger of attempting to cross the track, the question arises, When did Bessie Green place herself in a position of danger, and when she so placed herself did the plaintiff's employees exercise every effort to prevent injury to her? This question is answered both by the evidence and the findings. In the case at bar, as in the Minnesota case above quoted, it is apparent that Bessie Green was guilty of no contributory negligence up to the moment when she stepped upon the defendant's track in practically the actual presence of the approaching train. Until then she was in perfect safety, and, as said in the Minnesota case, "until then [which was to the very moment he stepped upon the main track] he had full control of his movements. He could by the slightest movement of his head towards the east have discovered his hazard, and by the slightest check of his movements have avoided the same."

Having then placed herself in a position of peril only from the moment she stepped from the pathway to the track, did the defendant's engineer, when her peril thus arose, have a clear opportunity of avoiding injuring her, and did he fail to do so? We are satisfied that this inquiry must be answered in the negative, and that this conclusion is irresistible when we consider the finding above quoted—special finding No. 7— in connection with another special finding—No. 6.

This last finding is, "That just as Bessie Green stepped upon defendant's track to cross the same, going as above described, she was struck by the engine of defendant's train, running down and along said track."

It is apparent from the quoted finding, No. 7, that from the moment the engineer discovered that Bessie Green was about to pass from the footway on to the track—from her place of safety to one of peril—he did all in his power to avert the accident, because it is expressly found, "that when within ten or fifteen feet from the place of such accident the engineer blew the whistle, applied the air-brakes and reversed the engine, and did all in his power, with the appliances he had to stop the train, and the fireman rang the bell."

Now, taking these findings together, it is quite clear that Bessie Green was guilty of contributory negligence in stepping from a point of safety to one of danger in the presence of the train, and without taking any of the ordinary precautions which the law cast upon her in her situation; that she was only placed in such peril at the moment when she stepped from her point of safety upon the pathway to the track; and that from the instant when she placed herself in that situation of peril, the defendant's employees did all in their power to avert the accident, but without avail. This was all the law required of them.

As, then, the special finding relied on by respondent is unavailing, considered in connection with the other findings, to take the case from the operation of the general rule, that contributory negligence will defeat a right of recovery, and as it appears that the proximate cause of the death of Bessie Green was her own contributory negligence, the judgment in favor of the plaintiff cannot be sustained, and it, together with the order denying defendant's motion for a new trial, are reversed, and the cause remanded.

McFarland, J., and Henshaw, J., concurred.

ANGELLOTTI, J., concurring.—I concur. Further consideration of the second question discussed in the foregoing opinion,—viz., the question as to the liability of the defendant, notwithstanding the contributory negligence of the deceased,— has forced me to the conclusion that the case is not brought by the findings within the exception to the general rule that contributory negligence of the injured person will bar a recovery. My views upon this general question are fully set forth in the opinion in *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514.[1]

Shaw, J., concurred with Angellotti, J.

BEATTY, C. J., dissenting.—I dissent. This case cannot be distinguished on the facts from *Lee* v. *Market-Street Ry. Co.,* 135 Cal. 295. If the judgment in that case was founded upon a proper application of the doctrine of "last clear opportunity to avoid the injury," the judgment in this case should

[1] 98 Am. St. Rep. —.

be affirmed. In my opinion delivered upon the former hearing, in commenting upon the facts quoted in the foregoing opinion of the court, I expressed the views to which I still adhere, as follows:—

"The rule of law applicable to the facts thus found is settled by a series of decisions of this court. In the most recent of these cases (*Lee* v. *Market-Street Ry. Co.*, 135 Cal. 295), it is briefly stated as follows: 'One having an opportunity by the exercise of proper care to avoid injuring another, must do so, notwithstanding the latter has placed himself in a position of danger by his own negligence.' This is almost a literal quotation from Justice Van Fleet's opinion in *Fox* v. *Oakland Cons. St. Ry.*, 118 Cal. 62,[1] where in support of the rule a number of cases are cited from our own reports, including *Esrey* v. *Southern Pacific Co.*, 103 Cal. 543, in which case the rule is thus stated: 'He who last has a clear opportunity of avoiding the accident by the exercise of proper care to avoid injuring another must do so.'

"In section 99 of Shearman and Redfield on Negligence it is said: 'It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury *was more immediately caused* by the defendant's omission after becoming aware of plaintiff's danger to use ordinary care for the purpose of avoiding injury to him.'

"This proposition is further amplified in the section cited, and the text is supported by a long array of decided cases. (See, also, Cooley on Torts, 674.)

"The essence of the doctrine seems to be, that contributory negligence of the plaintiff is not a defense in actions of this character, unless it is the proximate cause of the injury, and it is not such proximate cause when the defendant, after becoming aware of the danger plaintiff is in, or is evidently about to place himself in, could avert the consequence by the exercise of reasonable care. This sound and wholesome doctrine applies even in cases where no previous negligence on the part of the defendant has contributed to lull the plaintiff into a false security, and, *a fortiori*, it would have controlling force in a case like the present, where, as found by

[1] 62 Am. St. Rep. 216.

CXLIII. Cal.—4

the court, the defendant was moving its train at an excessive and dangerous speed along a street of the city of Los Angeles' without sounding bell or whistle and without the use of steam. According to the finding of the court, the engineer became aware of the danger into which plaintiff's wife was running, and might easily have avoided the collision by slackening the speed of the train, or by warning her of her danger by giving the signals which, under the law, it was his duty to give."

VAN DYKE, J., dissenting.—I dissent, on the grounds stated in the foregoing opinion of the Chief Justice.